## BROWN v. UNITED STATES (two cases).

### Nos. 563, 587.

United States District Court
S. D. West Virginia, Huntington Division.

Aug. 18, 1951.

686

M. O. Litz, and H. D. Rollins, Charleston, W. Va., for plaintiff.

A. Garnett Thompson, U. S. Atty., Charleston, W. Va., and Milton J. Ferguson, Asst. U. S. Atty., Huntington, W. Va., for defendant.

WATKINS, District Judge.

These suits are brought under the Federal Tort Claims Act. The facts are not in dispute.

George Karlos Brown, Jr., who was born on March 27, 1930, enlisted in the United States Navy for a term of three years beginning on June 29, 1948. He was classified as engineman fireman apprentice. On Saturday, June 4, 1949, while in such service, he was granted an authorized leave or liberty beginning at 8:30 o'clock a. m. on Saturday, June 4, 1949, and expiring at 6:00 o'clock p. m. on Monday, June 6, 1949. On Sunday, June 5, while on such shore leave, he and a companion went to the swimming pool maintained at Key West, Fla. by the United States Naval Station, to go swimming. While in swimming he dived down to the bottom of the pool where his right arm came into contact with an eight-inch suction pipe used to drain water out of the pool. This pipe was connected to a 650 gallon per minute centrifugal circulating pump, which was in operation, as water was then being drained from the pool. The pump will pull 20–30 inches of vacuum. The suction of the pump drew his right arm into the pipe up to the shoulder and fastened him there so that he could not release himself, and, as a result thereof, he was drowned. There was no screen or guard at the end of the drain pipe. When the pool was constructed in 1943 the plans called for such a strainer and a strainer was installed, but when repairs were made to the pool in 1946 the strainer was left off. The pump was not equipped with any type of automatic safety cut-off, used to cut off the pump automatically should the drainage be obstructed. Because of the shortage of men, no life guard was assigned to the pool or on duty at the time the accident occurred. No notice or instructions were posted to warn the swimmers that the pool was being drained, or to warn them of this dangerous condition. There was no attendant at the pool with full knowledge of how to stop the pump, and some time elapsed after the accident before the pump was turned off. Efforts to release Brown

and to bring him to the surface consumed from 5 to 15 minutes. The pool was provided and maintained by the United States for the benefit of servicemen, their guests and families. The pool was 104 feet 8 inches long and 50 feet wide, with a depth ranging from 4 feet 6 inches to 9 feet 8 inches, the drain pipe being located near the bottom at the deep end of the pool.

The deceased was 19 years 2 months and 8 days old at the time of his death. It would have been 1 year 9 months and 22 days before he reached his majority. At the time of his death his base naval pay was $80 per month. His life expectancy according to the Standard Mortality Table was 47.43 years. At the time of his death he was single and without children and there is no evidence that he contributed toward the support of his parents. After graduating from high school and before enlisting in the service he worked for a while earning $100 per week. He grew up in Logan, W. Va., but at the time of his death his parents were living in New Haven, W. Va. He was an intelligent young man in good health and enjoyed happy home surroundings.

From these undisputed facts I find that there was a duty upon the defendant to use reasonable care in the maintenance, operation and drainage of the pool for the safety of the deceased and others who were authorized and permitted to use the pool, and that the defendant failed to use such care, and was negligent (a) in failing to keep a life guard on duty at the pool, (b) to keep a screen over the open end of the pipe, or to otherwise warn the deceased of the dangerous condition existing when the suction pump was in operation, and (c) in failing to keep an attendant at the pool who was familiar with the operation of the suction pump, with knowledge of how to stop the pump in such an emergency. I also find that the deceased was guilty of no negligence which caused or contributed to his death, and that his death resulted from and was proximately caused by the negligence of the defendant, its employees and agents, who were acting within the scope of their employment and authority.

Second, I find that the Federal Tort Claims Act is applicable to this case and that plaintiffs are entitled to recover damages under that Act.

The defendant contends that the deceased was on active duty and not on furlough at the time of his death and that the case is governed by Feres v. United States, Jefferson v. United States and United States v. Griggs, all reported at 340 U.S. 135, 71 S.Ct. 153, 159. With this contention I am unable to agree. At the time of this unfortunate accident the deceased was on leave or liberty and was not on active duty. The facts are similar to Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, wherein the court held that the Government was liable under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. In the Feres, Jefferson and Briggs cases, Justice Jackson, speaking for the court, affirmed the Brooks case in the following language: " * * * The injury to Brooks did not arise out of or in the course of military duty. Brooks was on furlough, driving along the highway, under compulsion of no orders or duty and on no military mission. A Government-owned and operated vehicle collided with him. Brooks' father, riding in the same car, recovered for his injuries and the Government did not further contest the judgment but contended that there could be no liability to the sons, solely because they were in the Army. This Court rejected the contention, primarily because Brooks' relationship while on *leave* was not analogous to that of a soldier injured while performing duties under orders." (Emphasis supplied.)

It will thus be seen that so far as the Federal Tort Claims Act is concerned the Supreme Court uses the words "on furlough" and "on leave" as synonymous. In both cases the soldier is not on active duty, is not under compulsion of any orders or duty and is not on any military mission. He is free to go and do as he wishes.

Again in the same opinion at page 139 of 340 U.S., at page 156 of 71 S.Ct. Justice Jackson treats the words "on furlough" and "on leave" as synonymous as distinguished from a soldier "on duty" in the

following statement: "* * * We also are reminded that the Brooks case, in spite of its reservation of service-connected injuries, interprets the Act to cover claims not incidental to service, and it is argued that much of its reasoning is as apt to impose liability in favor of a man on duty as in favor of one on leave."

Third, the defendant says that there can be no recovery for mental pain and suffering by the father and mother, and that any damages must be purely nominal. I see no merit in this contention.

This action is brought under the Federal Tort Claims Act, Title 28 U.S.C.A. § 1346, which provides, in part, as follows:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

* * * * * *

"(b) Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The above section is qualified by Title 28 U.S.C.A., § 2674, which reads as follows:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

"If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof."

Thus, we find that under Section 1346(b) the substantive law applicable to actions under the Federal Tort Claims Act is, to use the words of the statute, "* * * the law of the place where the act or omission * * * occurred". Under Section 2674 the Government is liable "in the same manner and to the same extent as a private individual under like circumstances" save it shall not be liable for interest prior to judgment or for punitive damages, and in the event the law of the place where the act or omission occurred provides "for damages only punitive in nature", the Government shall be liable only "for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof."

It is, therefore, clear that the substantive law of Florida governs this case. Under Florida law the parents may recover for loss of services for the wrongful death of a minor child and for pain and mental suffering of the parents. Florida Code, Sections 768.01, 768.03, F.S.A. Florida Dairies Co. v. Rogers, 119 Fla. 451, 161 So. 85; Steele v. Miami Transit Co., 1948, 160 Fla. 362, 34 So.2d 530. An action for same may be maintained by the father for the benefit of himself and the mother. Atlantic Peninsular Holding Co. v. Oenbrink, 133 Fla. 325, 182 So. 812. Bowden, Adm'r v. Jacksonville Electric Co., 51 Fla. 152, 41 So. 400. Section 768.03 of the Florida Code, F.S.A., provides, in part, as follows: Whenever the death of any minor child shall be caused by the wrongful act, negligence, * * * of any individual * * * the father of such minor child * * * may recover, not only for the loss of services of such minor child, but in addition thereto, such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess."

In Florida Dairies Co. v. Rogers, supra, the court referred to this statute and said: "Two influences have prompted such stat-

utes in this country. The one is that in many cases it is practically impossible to prove pecuniary loss from the negligent death of a minor child, and in cases where such damages are susceptible of proof they are often so ridiculously low that a verdict or judgment based on them would be shocking to the mass or the judicial conscience. A second reason for such statute is a tendency in this country to raise money grubbing to the level of a moral virtue. In either event permission to the jury to supplement the amount awarded as compensatory damages with an amount for mental pain and suffering enables a verdict more consonant with the gravamen of the offense if that be possible." [119 Fla. 451, 161 So. 88.]

The law of Florida also provides for a recovery by the administrator for the benefit of the estate for prospective earnings. Florida Code, Section 768.02, F.S.A. The right of action under this statute is separate from the right of action by the father for loss of services and mental pain and suffering. When an infant loses his life two causes of action arise. One is in favor of the parents for loss of services up to date of his majority, and for mental pain and suffering. The other is in favor of his estate for prospective earnings. The latter action may be prosecuted by persons dependent upon decedent for support, and if there be no dependents, then by the executor or administrator of his estate. The two rights of action cannot be joined. Pensacola Electric Co. v. Soderlind, 60 Fla. 164, 53 So. 722.

The law of Florida does not provide for the recovery of "damages only punitive in nature". Therefore, the law of Florida does not come within the exception set up in Section 2674, Title 28, U.S.C.A. The exception in the Tort Claims Act providing that in states where the law permits "damages only punitive in nature" in wrongful death cases, the United States shall be liable only "for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, * * *" was placed there by amendment to cover the

two states (Alabama and Massachusetts), whose laws limit recovery to punitive damages. This was pointed out in Heath v. United States, D.C.N.D.Ala., 85 F.Supp. 196, 198, an Alabama Federal Tort Claims Act case, wherein the court said: "It is quite obvious that the Congress did not elect to relax the bar against the recovery of punitive damages so as to permit their recovery only in actions for wrongful death against the Government caused by acts occurring within these two states. It is equally apparent that the laws of the other forty-six states were considered entirely adequate to deal with the question of actual or compensatory damages in conformity with the express legislative intent to visit liability 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' Sec. 1346(b), Title 28 U.S.C.A."

The Government relies greatly on the Heath case to support its contention that only nominal damages may be awarded in this case. Since the Heath case was an Alabama case based upon the Alabama statute which provided for the recovery of punitive damages only, it came within the exception mentioned above, which says that when the state statute provides for only damages punitive in nature, then only actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, may be recovered. The Heath case is not in point because the Florida law does not so restrict damages. Florida is one of the other forty-six states whose laws Congress considered entirely adequate to deal with the question of damages in conformity with the express legislative intent to visit liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". Sec. 1346(b), Title 28 U.S.C.A.

In Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, the District Court awarded $25,425 to the administrator of a 32-year old soldier in a wrongful

death case under the Federal Tort Claims Act. In Atlantic Peninsular Holding Co. v. Oenbrink, supra, the court held that $4,000 was not excessive for the pain and mental suffering of the parents for the death of a 16-year old girl.

 For the foregoing reasons defendant's motion to dismiss Action No. 563 is denied and defendant's motions to dismiss and for summary judgment in Action No. 587, are denied. In the action by the father (No. 563), judgment is awarded in favor of the plaintiff and against the defendant for $5,000, and in the action by the father as administrator (No. 587), judgment is awarded in favor of the plaintiff and against the defendant for $17,000, the court finding these amounts to be fair, just, and reasonable compensation for damages sustained.