William E. HALE, a minor by next friend, John F. Hale, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

John F. HALE, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 19185.

United States Court of Appeals Sixth Circuit.

Sept. 26, 1969.

**356**

Norman D. Lane, Nashville, Tenn., for appellants.

J. F. Bishop, Atty., Dept. of Justice, Washington, D. C., for appellee; Carl Eardley, Acting Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., Gilbert S. Merritt, Jr., U. S. Atty., Nashville, Tenn., on brief.

Before O'SULLIVAN, EDWARDS and COMBS, Circuit Judges.

EDWARDS, Circuit Judge.

These are federal tort claims actions which were dismissed on the government's motions without hearing by the District Court for the Middle District of Tennessee. John F. Hale is the father of William E. Hale, a minor, who at the time in question was a soldier stationed at Fort Campbell, Kentucky.

In the posture of this appeal we recite the facts as they were pled by plaintiffs below (in this instance from William Hale's complaint):

"[O]n or about March 2, 1965, in Montgomery County, Tennessee, in or near the corporate limits of the City of Clarksville, Tennessee, an accident occurred between a privately owned automobile and a motor vehicle owned by the Defendant, United States Government, and operated by agents and servants of Defendant, United States Government, and the Plaintiff, who at the time was a pedestrian. Such accident occurred in form and fact as follows: On March 2, 1965, at approximately 12:45 a. m., your Plaintiff was standing on the curb on Second Street near its intersection with Marion Street in Clarksville, Tennessee, such Second Street being the one which continues on as the highway which runs past the gates allowing entrance into Fort Campbell, Kentucky, military reservation. Your Plaintiff was standing on said curb waiting for a ride back to the military base when a military vehicle approached him and stopped. Second Street is a four lane street with two lanes allowing traffic to flow northwardly, two lanes allowing traffic to flow southwardly. There is also a parking lane adjacent to the two travel lanes so that vehicles may stop and park and their occupants leave their vehicles. This said military vehicle which was a ¾ ton truck, outfitted and used as a military police vehicle from Fort Campbell, Kentucky, was driven at this time by Pfc. Robert John Petrashune of the 101st military police company of Fort Campbell,

Kentucky, with Pfc. Gilbert Lee Clayton as a passenger. Both such gentlemen being members of the United States Army and assigned as military policemen at Fort Campbell. As the military police vehicle, which was being driven in a northwardly direction back to Fort Campbell, approached the Plaintiff, the driver, Pfc. Petrashune, brought the vehicle to a stop in the outside travel lane of Second Street, completely blocking the flow of traffic in same. Pfc. Petrashune did not stop the vehicle in the parking lane. Pfc. Clayton ordered the Plaintiff to leave the safety of the curb to come out into the highway where the military police vehicle was stopped.

"Pfc Clayton asked the Plaintiff whether he was a civilian or in the military service. Plaintiff stated that he was a soldier, whereupon Pfc. Clayton asked to see his identification and the Plaintiff showed such to him. After checking the identification of the Plaintiff, Pfc. Clayton told the Plaintiff to get into the back of the military truck and they would give him a ride back to Fort Campbell. As the Plaintiff walked around behind the military vehicle, the privately owned automobile, owned by Richard Charles Scarbrough, and driven by Samuel Marshal Lane, approached the military vehicle from the rear of same.

"In an effort to avoid collision with the military vehicle, the driver of the privately owned vehicle attempted to pass the military police vehicle on the right side of the said military police vehicle, but to no avail, for the privately owned vehicle, which was a 1958 Pontiac convertible, struck the right rear bumper and fender of the military police vehicle with the left front fender and bumper of the Pontiac automobile. At the same time, the front end of the Pontiac automobile struck your Plaintiff."

Hale was seriously and permanently injured.

Appellants claim that the negligence of the military police in stopping the truck out in the roadway rather than in the curb lane rendered the United States liable under the Federal Tort Claims Act, 28 U.S.C. § 1346 (1964).

The government contended and the District Judge agreed that on the pleadings Hale's injuries arose out of or were in the course of activity incident to military service and, hence, the suits were barred under Feres v. United States, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

*Feres*, however, involved quite different cases. All of the claimants therein asserted injuries resulting from negligence of armed forces personnel while the servicemen who were injured were "on active duty and not on furlough."

Justice Jackson's rationale in *Feres* was also in some measure based on the fact that Congress had provided alternative remedial statutes which were applicable to the soldiers in that case. Feres v. United States, *supra*, at 144–145, 71 S.Ct. 153. *Cf.* United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). He took pains to list the statutes by which Congress had provided remedial measures applicable to that case. Feres v. United States, *supra*, 340 U.S. at 144, n. 12, 71 S.Ct. 153. See Appendix. These military assistance statutes (and their present derivatives cited in the Appendix) provided various forms of relief for servicemen injured or killed "in line of duty."

The more fundamental reasons for excluding tort actions against the United States for injuries in active military service pertain to such factors as military discipline and government immunity from the results of errors of military judgment. The cases hold that the Federal Tort Claims Act does not waive government immunity as to injuries arising directly from military activity because such cases do not state an allowable claim under the Tort Claims Act language: "The United States shall

**358**

be liable * * * in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1964). Feres v. United States, *supra,* at 141–142, 71 S.Ct. 153; United States v. Brown, 348 U.S. 110, 112–113, 75 S.Ct. 141, 99 L.Ed. 139 (1954); Brooks v. United States, 337 U.S. 49, 52, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). See United States v. Muniz, 374 U.S. 150, 159, 162, 83 S.Ct. 1850, 10 L.Ed. 2d 805 (1963).

■ The *Brooks* case, however, makes clear that the mere fact that a claimant at the time of injury is a serviceman does not automatically bar his Tort Claims Act relief. Brooks. v. United States, *supra,* 337 U.S. at 51–53, 69 S.Ct. 918. Actions brought by military personnel have been allowed under the Tort Claims Act where the facts would have made "private individuals" liable. Brooks v. United States, *supra;* Snyder v. United States, 118 F.Supp. 585 (D.Md.1953), *modified sub nom.* United States v. Guyer, 218 F.2d 266 (4th Cir. 1954), *rev'd per curiam* and *District Court opinion reinstated,* 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796 (1955); Knecht v. United States, 144 F. Supp. 786 (E.D.Pa.1956), *aff'd,* 242 F.2d 929 (3d Cir. 1957); Hand v. United States, 260 F.Supp. 38 (M.D.Ga.1966); Sapp v. United States, 153 F.Supp. 496 (W.D.La.1957); Barnes v. United States, 103 F.Supp. 51 (W.D.Ky.1962); Brown v. United States, 99 F.Supp. 685 (S.D.W. Va.1951). *See* Schwager v. United States, 279 F.Supp. 262 (E.D.Pa.1968). *See also* United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954).

But the question remains as to whether the Federal Tort Claims Act exclusion applies to injuries arising out of "line of duty" or to injuries arising "incident to military service." "Incident to service" is a much broader concept than "line of duty." *See* United States v. Carroll, 369 F.2d 618, 622 (8th Cir. 1966). It is obvious that in many cases the proofs necessary to establish that an injury happened in "line of duty" may be quite different from those required to establish

that it arose out of "activity incident to [military] service."

The standard "incident to military service" has many deficiencies as a basis for exclusion under the Federal Tort Claims Act as other courts have pointed out. It is so lacking in precision that the mere fact that the plaintiff was in military service at the time of the accident can provide a logical basis for the government's arguing for exclusion of the person concerned on a *post hoc, ergo propter hoc* basis. *See, e. g.,* Knecht v. United States, 144 F.Supp. 786, 789 (E.D. Pa.1956), aff'd, 242 F.2d 929 (3d Cir. 1957). Clearly, for example, the plaintiffs in Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), and United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), would not have been where they were at the time the injuries to each of them took place except for the fact that they were in or had been in military service.

In three Tort Claims Act cases the United States Supreme Court has used the terminology "incident to military service" and "in the course of military duty" (or "caused by [military] service") almost as if they were interchangeable. Brooks v. United States, *supra;* Feres v. United States, *supra;* United States v. Brown, *supra.* In two of these cases there was no need to choose between the standards. In *Brooks* the injury was not *even* incident to military service. And in *Feres* the injuries clearly arose on a military post in the course of military duty. In United States v. Brown, however, the injury complained of was alleged to be negligent treatment of a knee injury to a discharged veteran in a Veterans' Administration Hospital.

Although the Supreme Court in its decision in *Brown* referred in several instances to the standard of "incident to service," it appears to this court that the critical distinction it relied upon is stated as follows: "We adhere also to the line drawn in the *Feres* case between injuries that did and injuries that did not arise out of or in the course of military duty." United States v. Brown, *supra,* 348 U.S.

at 113, 75 S.Ct. at 144. Previously, in the same opinion, the Court had also said: "The present case is, in our view, governed by *Brooks,* not by *Feres.* The injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline." United States v. Brown, *supra* at 112, 75 S.Ct. at 143.

Confusion as to the proper standard to be applied is found in many of the cases decided by the District Courts and the Courts of Appeals.

### "LINE OF DUTY" CASES

Buckingham v. United States, 394 F.2d 483 (4th Cir. 1968); Bailey v. De Quevedo, 375 F.2d 72 (3d Cir.), cert. denied, 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274 (1967); Archer v. United States, 217 F.2d 548 (9th Cir. 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955); Brown v. United States, 99 F.Supp. 685 (S.D.W.Va.1951).

### "INCIDENT TO SERVICE" CASES

United States v. Carroll, 369 F.2d 618 (8th Cir. 1966); Chambers v. United States, 357 F.2d 224 (8th Cir. 1966); Preferred Insurance Co. v. United States, 222 F.2d 942 (9th Cir.), cert. denied, 350 U.S. 837, 76 S.Ct. 74, 100 L.Ed. 747 (1955); Zoula v. United States, 217 F.2d 81 (5th Cir. 1955); Gursley v. United States, 232 F.Supp. 614 (D.Colo.1964); Homlitas v. United States, 202 F.Supp. 520 (D.Or.1962); Sapp v. United States, 153 F.Supp. 496 (W.D.La.1957); Barnes v. United States, 103 F.Supp. 51 (W.D. Ky.1952); Richardson v. United States, 226 F.Supp. 49 (E.D.Va.1964).

### CASES EMPLOYING BOTH STANDARDS

United States v. Lee, 400 F.2d 558 (9th Cir. 1968), cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969); Knoch v. United States, 316 F.2d 532 (9th Cir. 1963); Callaway v. Garber, 289 F.2d 171 (9th Cir.), cert. denied, 368 U.S. 874, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961); Hand v. United States, 260 F.Supp. 38 (M.D.Ga. 1966); Fass v. United States, 191 F.

Supp. 367 (E.D.N.Y.1961); Snyder v. United States, 118 F.Supp. 585 (D.Md. 1953), modified sub nom. United States v. Guyer, 218 F.2d 266 (4th Cir. 1954), rev'd per curiam and District Court opinion reinstated, 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796 (1955).

Absent some further treatment by the United States Supreme Court of this puzzling dichotomy, we might well yield to the government's insistence that the broader standard of exclusion—"incident to military service"—was adopted in *Feres* and was not overruled by *Brown. See* Callaway v. Garber (United States), 289 F.2d 171 (9th Cir. 1961).

The Supreme Court has, however, seen fit to revisit the *Feres* case and to afford us a unanimous interpretation of *Feres,* albeit in dictum. In United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), (a case basically concerned with the applicability of the Federal Tort Claims Act to prisoners in federal penal institutions) Chief Justice Warren, for a unanimous court, discussed the rationale of *Feres* at length, and found no occasion for questioning its result. But .the Court also specifically concluded:

> "In the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed *in the course of military duty.* * * *'* United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139." *Id.* at 162, 83 S.Ct. at 1858. (Emphasis added.)

We believe that the Supreme Court has never to date had before it a case which required it to make a clear-cut choice between the conflicting standards referred to above as set out in *Brooks* and *Feres* and in *Brown.* This may be such a case. On the facts of this case, plaintiff's injury clearly "[arose] out of

\* \* \* activity incident to service." Feres v. United States, *supra,* 340 U.S. at 146, 71 S.Ct. at 159. If this were the standard, as the District Court assumed it to be, we would have no hesitancy in affirming dismissal of the complaint. But, as indicated above, we do not think it is. And we find it impossible in the state of the record now before us to determine under what we believe is the proper standard whether claimant's injuries "[arose] out of or in the course of military duty." *Id.*

■ Whether Hale's contact with the two military policemen resulted in his being *invited* to ride back to camp or whether he was placed under military orders which required him to get in the back of the truck cannot be resolved without an evidentiary hearing. By defining this question, we do not intend to limit the hearing which should include all evidence offered properly bearing on Hale's duty or nonduty status.

We remand the case to allow the District Judge to decide the motion to dismiss by taking testimony on what we deem to be the appropriate question: Did Hale's injuries arise out of or in the course of military duty?

If so, the motion to dismiss should again be granted. If not, the complaints should be tried on the merits.

The District Judge probably did not have the advantage of the thought expressed in the case of United States v. Muniz, *supra.* It was not cited to him by either of the parties.

The judgments are vacated and the cases are remanded for further proceedings in accordance with this opinion.

### APPENDIX

Subsequent to oral argument of this appeal, this court requested the parties to supply supplemental briefs responding to two questions:

1. What military assistance acts provide rights which appellant Hale may assert currently for injuries arising out of the accident involved in the above-styled litigation? *See* Feres v. United States, 340 U.S. 135, 144 n. 12, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

2. As to each act cited, set forth the standard concerning relationship to military service by which [appellant's] claim would have to be justified under the terms of the particular act.

In response to the first question the government's brief cites 38 U.S.C. §§ 310 and 314 (1964), as amended, (Supp. IV 1965–1968) (wartime disability compensation), and 42 U.S.C. §§ 2651–2653 (1964) (Federal Medical Care Recovery Act). The government's brief also cites the following statutes as providing possible other benefits which might become available:

"38 U.S.C. 315 (Supp. IV). Additional compensation for dependents.

"38 U.S.C. 321–322, 417(a). Entitlement of a surviving widow, children, and dependent parents of veteran who dies as the result of injury in line of duty.

"38 U.S.C. (and Supp. IV) 410–415, 416(b) (2), (c)–(d), (e) (4), 417(b). Deaths entitling survivors to dependency and indemnity compensation, and benefits thereupon payable.

"38 U.S.C. (and Supp. IV) 541–543. Pensions for widow and children of a veteran of the Vietnam era who at the time of his death was receiving or entitled to receive compensation or retirement pay for a service-connected disability."

■ The government's supplemental brief also asserts (and appellant's brief either concedes or does not deny) that Hale has been granted a 40% disability pension of $89 per month under 38 U.S.C. §§ 310 and 314 and has received medical care valued at $16,134 as computed under the standard of 42 U.S.C. §§ 2651–2653. The Supreme Court has held, however, that Congress has not required the serviceman to make an election of remedy but that where a serviceman claimant has received military benefits, these benefits may be deducted by the District Court

from any subsequent Federal Tort Claims Act judgment which included the same element or elements of damages. Brooks v. United States, 337 U.S. 49, 53, 69 S.Ct. 918, 93 L.Ed. 1200 (1949).

As to the court's second question, both supplemental briefs appear to show that the basic standard relating a soldier to military assistance injury benefits is that the injury was "suffered * * * in line of duty, in the active military, * * service during a period of war, * * *." *See* 38 U.S.C. § 310 (1964).