William E. HALE, a Minor, b/n/f John F. Hale, Plaintiff,

v.

UNITED STATES of America, Defendant.

John F. HALE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 4376, 4377.

United States District Court,
M. D. Tennessee,
Nashville Division.

Nov. 19, 1970.

Norman D. Lane, Dennis L. Tomlin, Nashville, Tenn., for plaintiff.

Charles H. Anderson, U. S. Atty., Nashville, Tenn., for defendant.

OPINION

NOEL P. FOX, District Judge.

These federal tort claims actions were brought by John F. Hale, the father of William E. Hale, a minor. At the time in question, March 1965, William E. Hale was a soldier stationed at Fort Campbell, Kentucky. The complaint alleges that the negligence of certain military police caused William E. Hale serious and permanent injuries, for which the United States is liable under the Federal Tort Claims Act, 28 U.S.C. § 1346 (1964).

The Government contends that this suit is not sustainable under this statute because Hale's injuries "arose out of or in the course of military duty." Hale v. United States, 416 F.2d 355 (6th Cir.1969). If Hale's injuries did arise out of or in the course of military duty, then the federal common law exclusion of certain military personnel claims from this Act's coverage, which is designed to preserve the "peculiar and special relationship of the soldier to his superiors * * *" United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), dictates that the plaintiffs' claims be dismissed.

William Hale testified that he was a private in the army when the accident occurred. On the evening of March 1, 1965, he had gone, dressed in civilian clothes, to Clarksville, Tennessee, which is about twelve miles from Fort Camp-

bell. He had been issued a Class A pass which permitted him to make this trip.

During the evening, the plaintiff had a few beers, and then some time after midnight, decided to hitchhike back to Fort Campbell. He admitted knowing that military personnel, including those within the limits of a valid Class A pass, were not permitted to hitchhike.[1]

By around 12:30 A.M., Private Hale had started hitchhiking back to Fort Campbell on 41-A, a main road between Clarksville and the Fort. In Clarksville 41-A is known as Second Street. Private Hale began hitchhiking from a spot just north of the intersection of Second Street and Marion Street. Second Street at this point has four twelve-feet wide traffic lanes, two in each direction, and two eight-feet wide parking lanes. All of the witnesses agreed that there was very little traffic on this cold and misty night. A used car lot across Second Street from where Private Hale was hitchhiking provided a substantial amount of light for this portion of the road.

Private Hale testified that he was standing in the street about three feet from the curb, hitchhiking, when he first noticed a three-quarter ton Army truck approaching him. He testified that he immediately left the street and stopped hitchhiking. Thereafter, the truck containing two military police, Privates Petrashune and Clayton, stopped even with him about eight feet from the curb.

Hale related the following conversation. The military policeman in the passenger seat, Private Clayton, asked him if he was military. Hale replied that he was. Clayton then asked to see Hale's military identification. In order to comply, Hale approached the truck and began taking his wallet out of his pocket. Clayton then told him that it was not necessary to produce his identification. Clayton concluded: "If you want a ride, get in the back of the truck." Hale then proceeded around to the back of the truck, started to climb into the truck and was struck by a speeding car which passed on the right side of the truck.

Private Hale's testimony is substantially supported by the depositions of Privates Clayton and Petrashune. They testified that on this particular evening they had drawn military police walking patrol in Clarksville. They were issued revolvers and a three-quarter ton army truck. The truck was to be used to transport military personnel if such transportation was needed.

The two military policemen testified that they had gone on duty about 7:00 P.M. Somewhere between midnight and 12:30 A.M. they were relieved of their walking duty. Both stated, however, that they were not off duty until they returned to Fort Campbell, and checked in their weapons and truck.

They left Clarksville about 12:30 A.M. with one other passenger, a Private Doerr, in the back of the truck. Private Doerr was also off duty, but had been picked up and was being returned to his unit because he was not sober. Private Petrashune was driving the truck. Private Clayton was the superior officer.

As the military police drove north on Second Street at about 25 miles per hour, they first noticed Private Hale hitchhiking when he was about 100 to 125 yards in front of them. At that moment, Hale was standing seven feet from the curb in the parking lane. They both testified that he continued to stand in the parking lane and continued to hitch-

---

1. Army Regulation 210-10 provides, in part:

    Paragraph 59. Hitchhiking. *Hitchhiking is prohibited by the Army.* This does not preclude acceptance of offers of rides voluntarily made by individuals or properly accredited organizations nor does it preclude the use of properly authorized and established share the ride or similar stations which may be sanctioned by the local military authorities. *The establishment and use of such facilities will be encouraged in the interests of both soldierly conduct and safety.* (Emphasis supplied.)

hike until the truck stopped right next to him.

Both military police testified that Clayton was the only one to talk to Hale. He asked if Hale was military or civilian. Hale said he was military—a member of the 17th Cavalry, a unit stationed at Fort Campbell. Clayton asked if he wanted a ride back to Fort Campbell; Hale said yes. Clayton then told Hale to get in the back of the truck. Accordingly, Hale went around to the back of the truck. A second or two later, the military police felt a sharp jerk, apparently as Hale's body hit the truck, and then saw a car swerve off down Second Street. Neither Private Petrashune nor Private Clayton saw this car approaching.

The testimony also evidences the nature of the military relationship between the military police and Private Hale at the time of the accident.[2]

The two military policemen testified that they felt that while on duty that night they had authority to make sure that military personnel in the Clarksville area, even though off duty in the conventional sense, stayed out of trouble. This authority permitted them to pick up or to arrest military personnel before they were arrested by civilian authorities. The testimony also evidences that these two military policemen often functioned as a type of buffer for military personnel in order to keep them out of serious trouble.

Both military policemen testified that they had been on car patrol before the date of this accident and that during such patrols, they were permitted to give military personnel rides. This, in fact, had often been done. They were not allowed, however, to give rides to civilians.

Privates Petrashune and Clayton also testified that they knew that the Army regulations made it illegal for military personnel to hitchhike, and that, as military police, they could arrest a soldier for this violation of the Army regulations. Often, however, arrests were not made for such a violation. Hitchhikers were generally just given a ride back to Fort Campbell. Accordingly, Private Clayton testified that it was his responsibility, as senior officer on this particular patrol, to determine whether any particular violation of the Army regulations required that his fullest military authority be exercised, or whether his duty could be performed by some other means.

More specifically, Private Clayton believed that Private Hale was under military police jurisdiction once he accepted the ride. Private Petrashune felt that they had jurisdiction over Private Hale as soon as they found out he was in the military.[3]

---

2. Relevant portions of Army Regulations 190–8, dated June 12, 1958, support these conclusions:

1. Purpose. These regulations provide policy guidance concerning off-post military police activities.

\* \* \* \* \*

3. General. Maintenance of peace and order, except in areas under military control, is primarily the responsibility of civil authorities. Off-post military patrols will be utilized only where they are determined to be essential to the accomplishment of the missions of the Armed Forces in a given area.

\* \* \* \* \*

5. Objectives of Armed Forces police detachments.

a. To assist in accomplishing the mission of the Armed Forces.

b. To assist military personnel and their dependents.

c. To reduce the incidence of offenses committed by military personnel.

d. To enforce the Uniform Code of Military Justice and other pertinent regulations, directives, and orders among persons subject to the Code.

\* \* \* \* \*

6. Armed Forces detachment operations.

c. Detachment personnel, in their execution of police duties, are authorized to apprehend for cause any person identified as subject to the Uniform Code of Military Justice.

3. The affidavit of Lieutenant Colonel Louis J. Klekas was filed in conjunction with the Government's motion to dismiss.

Finally, the parties made the following stipulations of relevant facts:

1. Private Hale was on a valid Class A pass at the time of the accident.

2. Private Hale was within the limits of that pass at the time of the accident.

3. Private Hale was dressed in civilian clothes.

4. The accident occurred at 12:45 A. M. on March 2, 1965.

5. The military policemen were agents of the Government.

6. The truck was owned by the Government.

7. The military policemen did not arrest Private Hale for hitchhiking.

8. Speed limit on Second Street was 30 miles per hour.

9. The plaintiff is entitled to compensation for his injuries pursuant to 38 U.S.C. §§ 310 and 314.

The court, therefore, makes the following findings of fact and conclusions of law:

1. On March 1, 1965, Private William Hale was issued a Class A pass, which permitted him to visit Clarksville, Tennessee. He had visited Clarksville that evening, and was returning to his base, Fort Campbell, when the accident occurred.

2. On March 1, 1965, Private Petrashune and Private Clayton were assigned, as military police, to patrol Clarksville. They had gone on duty early in the evening, and were still on duty at the time of the accident.

3. Private Hale was attempting to hitchhike back to Fort Campbell when he noticed an Army truck approaching him. Privates Petrashune and Clayton were in this truck and saw Private Hale hitchhiking. All three knew that this was illegal and that the military police had authority to arrest Private Hale for this violation of the Army regulations.

4. The truck carrying the military police came to a stop near Private Hale. A short discussion followed. Private Hale identified himself as being part of the military. He was not, however, arrested. Instead, he was offered a ride back to Fort Campbell. Private Hale accepted this offer.

5. Private Clayton told Private Hale where he should sit in the truck during the ride back to Fort Campbell. Private Hale was following these directions when he was struck by the speeding car.

6. While on duty as military policemen during the evening of March 1, 1965, Privates Petrashune and Clayton had the responsibility of supervising the conduct of military personnel in Clarksville, whether on duty or on a Class A pass.

7. When on duty as military police, Privates Petrashune and Clayton often attempted to carry out their duties with-

This affidavit supports the conclusions of the two military police.

LOUIS J. KLEKAS, Lieutenant Colonel, Military Police Corps, Serial Number 054888, United States Army, being first duly sworn, upon his oath deposes and says:

That he was the Provost Marshal at Fort Campbell, Kentucky, on 1 and 2 March 1965, and that on these dates he was the responsible officer for all Military Police activities in the Clarksville, Tennessee/Fort Campbell, Kentucky area.

\* \* \* \* \*

That the aforesaid Pfc CLAYTON and Pfc PETRASHUNE had the authority to identify military personnel in the Clarksville area and to transport such military personnel from Clarksville, Tennessee, to Fort Campbell, Kentucky, in the aforesaid ¾-ton military vehicle, such authority being implicit in their duty instructions implementing Army Regulations 190–8, dated 12 June 1958, and hereto attached to this Affidavit as Inclosure 1.

That at such time as military personnel had been identified by the aforesaid Pfc PETRASHUNE and Pfc CLAYTON in the Clarksville, Tennessee, area on the night of 1 March 1965, or the early morning hours of 2 March 1965, such personnel came under the dominion and control of the said Military Policemen, Pfc CLAYTON and PETRASHUNE.

out exerting their full authority and power.

8. Private Hale became subject to any orders or directions which Private Clayton, within the scope of his authority, might have given him as soon as Private Clayton discovered that Private Hale, whom he had observed violating the Army's "no hitchhiking" regulation, was in the military.

9. Private Hale, though within the limits of a valid Class A pass, was injured while following the directions of a military policeman, who at that moment had the authority and the responsibility of supervising Private Hale's conduct. Accordingly, maintenance of this suit could disrupt the "peculiar and special relationship of soldier to his superiors * * *."

10. In four separate cases the Supreme Court has emphasized that the partial exclusion of military personnel claims from the coverage of the Federal Tort Claims Act is premised upon a concern that this Act should not disrupt the relationship between soldier and officer. Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), United States v. Brown, 348 U.S. 110, 75 S.Ct. 141 (1954), and United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).

In Brooks v. United States, supra, the plaintiffs, while on furlough, were injured by a negligently driven army truck. The court permitted the suit to be brought because the case dealt "with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired." 337 U.S. at 52, 69 S.Ct. at 920.

In Feres v. United States, supra, where the court ruled that three separate suits were not maintainable, each of the plaintiffs was injured while on active duty. The Brooks case was distinguished because the Brooks' injuries

" * * * did not arise out of or in the ordinary course of military duty. Brooks was on furlough, driving along the highway, under compulsion of no orders or duty and on no military mission." 340 U.S. at 146, 71 S.Ct. at 159.

In United States v. Brown, supra, the court permitted a veteran to bring suit for negligent medical treatment he received as a veteran in a V.A. hospital. The court reasoned that "[t]he injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline." 348 U.S. at 112, 75 S.Ct. at 143.

Most recently in United States v. Muniz, supra, the court reviewed its reasoning in Feres:

In the last analysis, *Feres* seems best explained by the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty * * *." United States v. Brown, 348 U.S. 110, 112 [75 S.Ct. 141, 143]. 374 U.S. at 162, 83 S.Ct. at 1858.

Finally, in Archer v. United States, 217 F.2d 548 (9th Cir. 1954), a case described by the Sixth Circuit as applying the correct legal standard, Hale v. United States, supra, 416 F.2d at 359, the court dismissed a suit with facts strikingly similar to the instant case.

The injured party was a cadet to a Military Academy who was on leave, gratuitously riding back to school on an Air Force plane. The plane crashed, allegedly due to the negligence of the pilot. The court ruled that the plaintiff could not recover, even though on leave and gratuitously on the plane. The plaintiff was under military discipline once on the plane, and so could not recover.

The Trial Court was undoubtedly correct in holding that a cadet riding under military discipline on an army

plane under control of a superior officer has no claim under the Act for injury sustained through whatever cause. This principle would not vary even though the service man were on leave and whether he were on the plane voluntarily or by command. He was in line of duty. 217 F.2d at 551.

 At the time of the accident involved in the instant suit, Private Hale was subject to the military supervision and authority of military policemen Clayton and Petrashune. Moreover, Private Hale was injured while following the specific directions of military policeman Clayton.

Accordingly, Private Hale's injuries "arose out of or in the course of military duty."

Therefore, this suit is hereby dismissed.