Henry R. MILLIKEN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 76–50–C2.

United States District Court, D. Kansas.

Dec. 17, 1976.

R. Pete Smith and Joseph H. McDowell of McDowell, Rice, Baska & Smith, Kansas City, Kan., for plaintiff.

James P. Buchele, U.S. Atty., Douglas B. Comer, Asst. U.S. Atty., Kansas City, Kan., for defendant.

MEMORANDUM AND ORDER

O'CONNOR, District Judge.

The plaintiff has filed a three count complaint alleging jurisdiction under the Federal Tort Claims Act (FTCA) 28 U.S.C. § 2672

et seq., and the Fifth and Eighth Amendments to the United States Constitution. Plaintiff has provided the court with evidence that he has exhausted his administrative remedies as required by 28 U.S.C. § 2675. The government has filed a motion to dismiss or in the alternative for summary judgment as to all counts.

In his Memorandum in Opposition to the pending motion, the plaintiff has offered the following summary of his version of the essential facts:

"On or about June 28, 1974, Pvt. Henry R. Milliken, 402–50–2081, was a prisoner confined in the cell block known as '7 Base,' Disciplinary Barracks, Fort Leavenworth, Kansas. At approximately 9:30 o'clock A. M. on the above date, several law enforcement officers, whose names appear in plaintiff's complaint, removed the prisoner from his cell and transported him to an area designated as '4 Base'. Building # 479, Disciplinary Barracks, Fort Leavenworth, Kansas. Upon reaching the latter location, the plaintiff was told to strip off all of his clothing except his underwear, which he did. After the plaintiff finished undressing and without any provocation, Sgt. Cowart screamed the command 'Now!' at which time the other officers present responded by knocking the plaintiff to the floor, kicking, punching and beating upon the plaintiff until Sgt. Cowart indicated that that was enough. The officers then picked up the plaintiff and carried him back to his cell in '7 Base' at which time additional blows were delivered to the plaintiff's head, neck, back and legs until Sgt. Cowart ordered 'Okay, come on out.'

The plaintiff immediately notified the officials that he needed medical attention but this request was initially rejected as being unwarranted.

After the beating, which was the result of premeditated, prearranged plan involving the officers who actively participated in the concerted action, there was an intentional coverup of the incident of said officers. They conspired to fabricate a fictitious account of what happened by adopting a plan calling for all those persons involved in this incident to state that their actions were necessary to subdue the plaintiff after he had made an unprovoked attack upon the genital area of one of the officials, namely Sp5 Ronald Greene, who was present and actively participated in the removal of the plaintiff from '7 Base' to '4 Base'. This scheme was implemented and it was temporarily successful in that the first investigative report concluded that the actions of these law enforcement officers were justified. The actual facts were not forthcoming until a more thorough, supplementary investigation was conducted.

These facts, relating to the cover-up, were established in a report dated 23 July, 1975, prepared by the Fort Leavenworth Field Office, Sixth Region, USA-CIDC, wherein appeared the following:

SUBSTANTIATION

The foregoing (facts relating to the cover-up) is (are) substantiated in written statement made by GREENE and CO-WART, who after receiving a grant of use immunity, admitted that MILLIKEN had not assaulted GREENE, that the guards, including themselves, had fabricated the story that MILLIKEN had assaulted GREENE to cover-up their own actions."

Plaintiff has further alleged that the entire incident was videotaped by a Sgt. Austin, one of the officers involved in the incident. A copy of the videotape is now in the possession of plaintiff's counsel.

Subsequent to the date of the incident Pvt. Milliken, was removed to the United States Penitentiary located in Leavenworth, Kansas, where he remained until his release from confinement.

Counts I and II of the complaint appear to be based solely upon the FTCA. Count I seeks $25,000 actual damages for assault and battery. Count II seeks $10,000 for intentional infliction of mental distress. Count III seeks $10,000 in damages and relates to the alleged cover-up of the June 28, 1974 incident. This count appears to be based at least in part upon an abuse of

process claim under the FTCA. Plaintiff also alleges, however, that the cover-up violated his Fifth Amendment right to due process and his Eighth Amendment right not to be subjected to cruel and unusual punishment. Plaintiff is contending that the alleged violation of his constitutional rights by federal agents in and of itself is enough to sustain his cause of action on this count under the theory of *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

## I

The first hurdle which the plaintiff must clear is the government's contention that his claims are barred due to his status in the military.

The FTCA purports to make the United States liable "in the same manner and to the extent as a private individual under like circumstances." 28 U.S.C. § 2674. The only specific exceptions in the FTCA which appear to be directed at military personnel bar claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." (28 U.S.C. § 2860(j) ), and "arising in a foreign country." 28 U.S.C. § 2680(k). The right of servicemen to bring claims that do not fall within these exceptions has been further clouded, however, by three United States Supreme Court cases. *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954).

The servicemen plaintiffs in the *Brooks* case were on furlough, driving their own car on a public highway when they were involved in an accident with an Army truck.[1] The Court rejected the government's argument that the FTCA could not be applied to servicemen, stating:

"The statute's terms are clear. They provide for District Court jurisdiction over *any* claim founded on negligence brought against the United States. We are not persuaded that 'any claim' means 'any claim but that of servicemen'. . . . It would be absurd to believe that Congress did not have the servicemen in mind in 1946, when this statute was passed. The overseas and combatant activities exceptions make this plain.

More than the language and framework of the act support this view. There were 18 tort claims bills introduced in Congress between 1925 and 1935. All but two contained exceptions denying recovery to members of the armed forces. When the present Tort Claims Act was first introduced, the exception concerning servicemen had been dropped." *Brooks, supra*, 337 U.S. at 51–52, 69 S.Ct. at 919.[2]

Justice Murphy went on to respond to the government's contention that allowing servicemen to utilize the FTCA would produce drastic results:

"The Government envisages dire consequences should we reverse the judgment. A battle commander's poor judgment, an army surgeon's slip of hand, a defective jeep which causes injury, all would ground tort actions against the United States. But we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented."
*Brooks* at 52, 69 S.Ct. at 920. (footnote omitted).

A scant eighteen months later Justice Jackson declared that *Feres* was the "wholly different case" referred to in *Brooks*.

1. All of the cases which have discussed the ability of servicemen to bring claims under the FTCA involve negligence claims and are therefore somewhat inapposite to this case. The reason for this is that prior to *Bivens* and the March 16, 1974 amendment of 28 U.S.C. § 2680(h) intentional torts were not cognizable at all under FTCA. Whether or not the plaintiff's claims are barred by new § 2680(h) is itself a significant question, as will be discussed *infra*.

2. These bills are set out in *Brooks* 337 U.S. at pages 51–52, 69 S.Ct. 918, notes 2, 3, and 4.

*Feres, supra*, 340 U.S. at 138, 71 S.Ct. 153. *Feres* was actually three different cases. Two of the cases involved negligent treatment of servicemen while in Army hospitals. The third serviceman died in a fire at his barracks as a result of a defective heating unit. The Court held that all of these claims could not be brought under the FTCA. The common thread seemed to be that "each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces." *Id.* In distinguishing *Feres* from the *Brooks* case, Mr. Justice Jackson stated:

"Brooks was on furlough, driving along the highway, under compulsion of no orders or duty and on no military mission.

. . .

. . . . .

Brooks' relationship while on leave was not analogous to that of a soldier injured while performing duties under orders.

We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."

340 U.S. at 146, 71 S.Ct. at 159.

Our reading of *Feres* leads us to believe that there were four basic factors that combined to constitute the court's rationale: (1) the aforementioned fact that all of the servicemen in *Feres* were at all times on *active* duty; (2) the impracticalities of allowing military personnel to be able to routinely sue their superiors for mistakes of judgment or lack of care relating to military duties; (3) that no state law existed which allowed state militia men to sue their superiors for incidents relating to their duty, and therefore allowing these claims would be going beyond the purpose of the FTCA, which is to make the federal government liable in the same manner as individuals in like circumstances under appropriate *state* law; and (4) the fact that under various

federal laws the servicemen in *Feres* or their families were able to receive compensation for their deaths or injuries without resorting to the FTCA.[3]

In the *Brown* case, the serviceman plaintiff suffered a knee injury which led to his honorable discharge. Seven years later, still experiencing trouble with his knee, he returned to a Veteran's Administration hospital to have an operation performed on the knee and later brought suit for negligent treatment related to the operation. The court held that Brown's claim was cognizable under the FTCA, emphasizing that Brown was not in any way on active duty at the time of the operation. Justice Douglas also restated the *Brookes/Feres* doctrine in his concluding sentences:

"We adhere also to the line drawn in the *Feres* case between injuries that did and injuries that did not arise out of or in the course of military duty. Since the negligent act giving rise to the injury in the present case was not incident to the military service, the *Brooks* case governs and the judgment must be *Affirmed.*"

348 U.S. at 113, 75 S.Ct. at 144.

In the 22 years since *Brown*, the Supreme Court has spoken of *Feres* only once. In *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1962), Chief Justice Warren, the spokesman for a unanimous court, wrote:

"In the last analysis, *Feres* seems best explained by the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . . *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141."

374 U.S. at 162, 83 S.Ct. at 1858.

**3.** It should be noted that both the *Brooks* and the *Brown* cases seem to indicate that this should not be a factor. "We will not call either remedy in the present case exclusive, nor pronounce a doctrine of election of remedies, when Congress has not done so . . . . In the very act we are construing, Congress provided for exclusiveness of the remedy in three instances . . . and omitted any provision which would govern this case." *Brooks*, 337 U.S. at 53, 69 S.Ct. at 920; see also *Brown*, 348 U.S. at 113, 75 S.Ct. 141.

The language of *Brooks, Feres* and *Brown* has caused considerable disarray among the District Courts and Courts of Appeals. The principal source of confusion stems from the Supreme Court's interchangeable use of two phrases as the appropriate standard; "incident to military service", and "in the line (or course) of military duty". See *Hale v. United States,* 416 F.2d 355 (6th Cir. 1969).[4] In *Hale,* the Sixth Circuit noted the "incident to service" standard seemed to favor the government, while the "in the course of duty" standard favored the serviceman.[5] The Sixth Circuit further noted that the Supreme Court had never chosen between these standards, since the plaintiffs in *Brooks* were clearly not barred by either standard, and the plaintiffs in *Feres* were clearly barred by either standard, and concluded that controlling weight should perhaps be given to the closing language from *Brown,* which invokes the "in the course of duty" standard.

The Tenth Circuit has spoken to the issue only once, *Harten v. Coons,* 502 F.2d 1363 (10th Cir. 1974).[6] *Harten* relied almost entirely upon the "active duty" factor enunciated in *Feres* ;

"Thus, if a claimant is on leave, or on inactive status at the time of the injury, or if the injury is not the product of a military relationship, suit under the Act may be allowed.

On the other hand, when a serviceman on active duty sustains an injury stemming from the military relationship, courts consistently have denied recovery under the Act." (footnotes omitted) 502 F.2d at 1365.

One remaining case is vital to our discussion. In *Muniz, supra,* the Supreme Court held that federal prisoners could file claims under the FTCA. Despite the protestations of the government, the *Feres* rationale was found to be not applicable to inmates.

We return at last to Pvt. Milliken to apply what we have learned to his claims. The factual record before the court is lacking in some respects but the plaintiff has alleged the following either in his complaint or in his memorandum in opposition to this motion; prior to the incident the plaintiff had been convicted of a felony by court martial; he had thereupon been sentenced to a definite term of imprisonment; at the time of sentencing he had been given a bad conduct discharge which revoked all privileges he would be entitled to as a member of the military; at the time of the incident he was receiving no pay nor any other form of compensation from the military; he was not performing any military tasks under any orders and his activities could not be characterized in any manner as the performance of any duties as a soldier; and subsequent to the (June 28, 1974) incident, he was transferred to the United States Penitentiary at Leavenworth, Kansas, to serve the remainder of his term of imprisonment.

Plaintiff persuasively argues that these facts demonstrate he was at the time of the incident nothing more than a federal prisoner, and therefore the rationale of *Muniz,* and not *Feres,* should be applied.

Returning to the four factors given great weight in the *Feres* case, we have difficulty in saying that any of them apply to Pvt. Milliken's situation. There is no evidence he was engaged in any kind of "active duty" as a member of the military. Having been discharged and imprisoned, plaintiff

---

4. For a complete compilation through 1969 of the cases employing the "line of duty" standard, the "incident to service" standard, or both, see the *Hale* case, 416 F.2d at 359.

5. The *Hale* case involved an automobile accident which occurred off the military base. Hale was having a conversation with two members of the military police who asked him to get into their truck when the accident occurred. The Sixth Circuit remanded the case to the District Court for determination of whether or

not Hale's injuries occurred in the line of duty, specifically noting that the District Court should determine whether or not Hale was being invited or being ordered to get into the truck.

6. The *Harten* case involved a serviceman who during his tour of duty voluntarily entered a military hospital to have a vasectomy performed and subsequently sued for damages when his wife became pregnant.

could hardly be characterized as a soldier, and therefore the "peculiar and special relationship of a soldier to his superior" referred to in *Brown* and *Muniz* simply did not exist. The third factor, relating to applicable state law, seems to be largely abrogated by the specific holding in *Muniz, supra*, 374 U.S. at 165, 83 S.Ct. 1850.[7] Finally, the court is unaware of any statute other than the FTCA, and the government has cited none, under which the plaintiff could conceivably obtain compensation for his injuries.

For purposes of this motion, the court must assume that all of the plaintiff's allegations are true. On the record before us, this case seems to fit more comfortably within the logic of *Muniz* than *Feres*. These claims certainly did not arise while Pvt. Milliken was engaged in the course of military duty. Further, they did not arise incident to Pvt. Milliken's service in the military, "except in the sense that all human events depend upon what has already transpired." *Brooks, supra*, 337 U.S. at 52, 69 S.Ct. at 920.

The government has cited two cases which it argues should be dispositive of this case. *Shaw v. United States*, 448 F.2d 1240 (4th Cir. 1971); *James v. United States*, 358 F.Supp. 1381 (D.R.I.1973). In *Shaw*, the serviceman, one Pvt. Steele, was confined at the time of his death in the post stockade following his conviction by a special court martial for being AWOL. Pvt. Steele and four other soldiers confined in the post stockade were ordered by a Sergeant to remove paint from the floor of the building with gasoline and an electric buffer. The gasoline caught fire and Pvt. Steele was severely injured and died.

As the plaintiff has accurately pointed out, the Fourth Circuit in *Shaw* relied heavily on the following three factors: (1) at the time of the fire, Pvt. Steele was performing some specific duties under specific orders; (2) even though Pvt. Steele was confined in

the stockade he was receiving military pay and allowances; and (3) Pvt. Steele was covered by various acts of Congress providing compensation for injuries or death suffered by members of the armed forces. For reasons already stated none of these factors are applicable to Pvt. Milliken, and therefore the *Shaw* decision is distinguishable.

Serviceman James was on leave on the day when he died. However, prior to the incident which resulted in his death, he had been arrested by military security personnel, was charged with disorderly conduct and was awaiting transfer for purposes of taking a sobriety test when the incident occurred. At the time of his death James was a soldier under direct orders, and therefore his case involved "significant military discipline interests." 358 F.Supp. at 1385. This factor seemed paramount in the court's view:

"What plaintiff has been unable to counter is the concern in *Feres* over the unique relationship of a serviceman to his superiors." *Id.*[8]

Again, for reasons previously mentioned, this reasoning is not applicable to Pvt. Milliken.

The court is convinced that the government's motion, insofar as it is based upon the *Feres* doctrine, should be denied at this time.

## II

The FTCA as originally drafted completely excluded actions based upon what are commonly known as intentional torts:

§ 2680. *Exceptions.*

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(h) Any claim arising out of assault, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

It was not until after and no doubt in response to *Bivens v. Six Unknown Agents*,

---

7. Support for this proposition is found in one of the cases relied upon by the government. See *James v. United States*, 358 F.Supp. 1381 at 1385 (D.R.I.1973).

8. The First Circuit has apparently approved the District Court's treatment of the *Feres* doctrine in the *James* case. See 502 F.2d 1159 and 530 F.2d 962.

*supra,* that Congress amended § 2680(h) effective March 16, 1974, to add the following language:[9]

> *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

It is obvious that plaintiff's cause of action based upon the FTCA is dependent upon a showing that the officers involved were "investigative or law enforcement officers." There are no facts currently on the record from which the court could make a decision as to whether the officers involved were within the scope of the statute. Nevertheless, it would seem to be advantageous to both parties and to the court to resolve this issue prior to trial. The parties are invited to stipulate to facts relating to the duties of the officers from which the court can decide this question. If the parties are unable to do so, an evidentiary hearing should be held to resolve this issue.

### III

The remaining issue raised in the briefs of the parties is whether, under the rationale of *Bivens,* the plaintiff can proceed on Count III merely by alleging the violation of his constitutional rights by federal officers. The government contends that the *Bivens* decision only authorizes an action against the officers as individuals, and does not waive any sovereign immunity defense of the United States. Plaintiff, of course, disputes this.[10]

---

**9.** See 2 U.S.Code Congressional and Administrative News 2789 (1974).

**10.** We do wish to note a recent Tenth Circuit case not cited by either party, *Dry Creek*

Since Count III is also based on the FTCA the court sees no need to resolve this issue at this time. If the court subsequently rules that the plaintiff is barred by § 2680 from bringing claims under the FTCA, this issue will then be ripe for decision.

Accordingly, the government's motion to dismiss or in the alternative for summary judgment is denied at this time.

IT IS SO ORDERED.

---

*Lodge, Inc. v. United States,* 515 F.2d 926 (1975), which seems to (at least inferentially) support the government's position, though the issue is not directly discussed.