**Henry L. KNIGHT, Administrator of the Estate of John Dawson Knight, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. No. C-72-208.**

United States District Court,
W. D. Tennessee, Western Division.

Oct. 31, 1972.

Lucius E. Burch, Jr., Joel Porter, Burch, Porter & Johnson, Memphis, Tenn., for plaintiff.

Thomas F. Turley, Jr., U. S. Atty., Glen Reid, Jr., Asst. U. S. Atty., Memphis, Tenn., for defendant.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

This action was brought, pursuant to the Federal Tort Claims Act, by Henry L. Knight for the wrongful death of his son, Corporal John Dawson Knight. Corporal Knight's death occurred on the night of March 31, 1970, as a result of his drowning in the enlisted men's swimming pool at the Naval Air Station in Millington, Tennessee. The plaintiff claims that Corporal Knight's death was the direct and proximate result of the negligence of the Government, acting through its agents, in the design, construction, maintenance and operation of the pool.

Only under some circumstances may a serviceman or his representative maintain an action under the Tort Claims Act. The threshold question for our determination is whether this particular plaintiff may maintain this action. The Government contends that the plaintiff may not and has filed a motion for summary judgment. A hearing was held, evidence taken and argument heard. We believe that the case is now ripe for disposition on summary judgment. The purpose of this memorandum decision is to express the reasons for our determination that the motion for summary judgment should be granted.

### I. *Facts*

The facts insofar as they are pertinent to this motion are as follows. At the time of his death, Corporal Knight was stationed at Millington and on active duty. He drowned at approximately 8:00 P.M. in a pool that was open to civilians as well as servicemen. At the time the tragedy occurred, a Boy Scout troop was using the pool.

At the time of his death Corporal Knight was using the pool for recreational purposes. Having completed his normal daily military duties, he was on "authorized liberty," a status which entitled him to engage in personal activities on or off the base until it was time for him to report to work at 8:00 A.M.

the next day. Nevertheless, Corporal Knight was still subject to military orders throughout the course of his liberty status. As testified to by Captain Richard Rogers of the Naval Judge Advocate General Corps, all naval personnel using the pool are subject to any lawful orders given them, including any orders issued by a Navy lifeguard. Captain Rogers further testified that if one of the naval personnel disobeyed a lawful command of a lifeguard, he would be subject to military discipline, whereas a civilian who disobeyed such an order could not be punished by military authorities. Though, at the time of his death, Corporal Knight was subject to any lawful order given him, the record does not establish whether there were actually present at the scene of the accident any lifeguards who had given, or were in a position to give, Corporal Knight any lawful orders. For purposes of this motion we shall assume that at the time the tragedy occurred there were no lifeguards present at the scene of the accident and that Corporal Knight was not acting under any military order.

### II. *The Brooks-Feres-Brown Line of Cases*

In three cases spanning the years, 1949–1954, the United States Supreme Court attempted to define the circumstances under which a serviceman could maintain an action for personal injury under the Tort Claims Act. The first of these cases, Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), held that servicemen were entitled to recover under the Tort Claims Act for injuries which would otherwise be actionable, provided the injuries were not "incident to their service." The two plaintiffs in *Brooks* were brothers who, while on furlough from the army, were injured on a public highway when the privately owned automobile in which they were riding was struck by an army truck being driven by a civilian employee. The Court held that the plaintiffs' injuries were not incident to their military service and, thus, allowed recov-

ery under the Act. The Court was careful to confine its holding to cases involving injuries which were not "incident to service." Thus, the Court said at 337 U.S. 52, 69 S.Ct. 920:

> "The Government envisages dire consequences should we reverse the judgment. A battle commander's poor judgment, an army surgeon's slip of hand, a defective jeep which causes injury, all would grant tort actions against the United States. But we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented."

In Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court was again called upon to determine the circumstances under which servicemen could bring actions under the Tort Claims Act. Stating that the case before it was the " 'Wholly different case' reserved from our decision in *Brooks*," 340 U.S. at 138, 71 S.Ct. at 155, the Court, in denying recovery, held that the Tort Claims Act does not extend its remedy to members of the armed forces who sustain "incident to their service" what would otherwise be an actionable wrong. *Feres* involved three separate cases which came up from three different circuits. One plaintiff was the representative of an army officer whose death was caused by a fire in an allegedly unsafe barracks where he was quartered while on active duty. Another plaintiff was the representative of a soldier whose death was allegedly caused by negligent and unskillful treatment by army surgeons while he was on active duty. The third plaintiff was injured when a towel was left in his stomach during the course of an operation he was required to undergo while in the army.

In reaching its decision, the Court primarily relied on that part of the Tort Claims Act which reads: "The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. The Court concluded that the claims were not within the scope of this language, because there existed no analogous liability on the part of either an individual or a state. The Court said at 340 U.S. 141–142, 71 S.Ct. 157:

> "One obvious shortcoming in these claims is that plaintiffs can point to no liability of a 'private individual' even remotely analogous to that which they are asserting against the United States. We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving. Nor is there any liability 'under like circumstances,' for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command."

Noting that Congress had provided that the law governing a claim brought under the Tort Claims Act is to be the law of the state where the act or omission occurred, the Court also reasoned that the uniquely federal relationship of a soldier to the Government should not be disturbed by state laws. Along this same line, the Court said that it would be unfair to subject servicemen to the variations in state law, since they have no say in where they are assigned.

The next case in which the Supreme Court had occasion to consider a claim brought by a serviceman was United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). That case involved a serviceman who, after his discharge from the service, suffered an injury to his knee when an allegedly defective tourniquet was used during the course of an operation performed in a Veterans Administration hospital. He had originally hurt his knee while on active duty. The Court held that the plaintiff could maintain an action under

the Tort Claims Act for damages arising out of the operation. The Court held the action maintainable because the injury was not incurred while the plaintiff was on active duty or subject to military discipline. In so holding, the Court said that it was adhering "to the line drawn in the *Feres* case between injuries that did and injuries that did not arise out of or in the course of military duty." 348 U.S. at 113, 75 S.Ct. at 144.

III. *Recent Sixth Circuit Pronouncement: The Hale Opinions*

The Sixth Circuit had an opportunity to deal with a serviceman's claim under the Tort Claims Act in Hale v. United States, 416 F.2d 355 (1969). That case came up to the Court of Appeals on an appeal from the District Court's order granting the Government's motion to dismiss without a hearing. Because of the posture of the appeal, the Court of Appeals recited the facts as they were stated in the complaint. Those facts may be summarized as follows. On March 2, 1965, at approximately 12:45 A.M., the plaintiff, an army private, was standing on the curb of the main highway which runs through Clarksville, Tennessee, waiting for a ride back to Fort Campbell in Kentucky when a military police truck approached him and stopped. According to the complaint, one of the two men riding in the front of the truck "ordered" the plaintiff to come out into the highway where the military police vehicle was stopped. The same man then asked the plaintiff whether he was a civilian or a serviceman. The plaintiff stated that he was a soldier, whereupon the man asked to see his identification. After checking the identification, the M.P. told the plaintiff to get into the back of the truck and they would give him a ride back to Fort Campbell. The plaintiff walked around to the back of the vehicle at which time he was struck by an oncoming car.

The District Court had granted the Government's motion because, in its view, the injuries had arisen out of an accident which occurred incident to the plaintiff's military service. The Court of Appeals agreed that the injuries arose out of an accident which occurred "incident to service," but nevertheless reversed the trial court in granting the motion to dismiss on the grounds that the facts failed to show whether the injuries "arose out of or in the course of military duty." 416 F.2d at 360. The case was remanded to the District Court for an evidentiary hearing to be conducted in accordance with the standard (the so-called "line of duty" test) prescribed by the Court of Appeals.

On remand, the District Court made detailed findings of fact which greatly supplemented the facts previously before it on the original motion to dismiss. Those facts may be summarized as follows. The plaintiff, who was on a valid Class A pass at the time of the accident, had been hitchhiking at the time the truck approached him and stopped. Hitchhiking was prohibited by Army regulations and the military police who stopped the plaintiff had the authority to arrest him. However, on this occasion, the military police attempted to follow their usual routine of transporting the violator back to the base without arresting him. The plaintiff, after having been directed where to sit in the back of the truck, was injured as he walked to the back of the truck. The Court concluded that the plaintiff had become subject to any lawful order of the military police as soon as the latter had discovered that the plaintiff, whom they had observed hitchhiking, was a serviceman. Moreover, the Court concluded that the plaintiff, though within the limits of a valid Class A pass, "was injured while following the directions of a military policeman, who at that moment had the authority and the responsibility of supervising Private Hale's conduct." 334 F.Supp. 566 (M. D.Tenn.1970) at 570. On the basis of these conclusions the District Court held that the injury "arose out of or in the course of military duty."

The case was then appealed once again to the Sixth Circuit where it was af-

firmed. Hale v. United States, 452 F.2d 668 (1971). In affirming the decision of the District Court, the Court of Appeals stated at 452 F.2d 669:

> "Under the facts as found, we conclude that when appellant started to enter the M.P. truck, whether as a result of invitation or command, he re-entered a direct disciplinary relationship with his army command and as a consequence, there is no ground for reversal of the District Judge's findings that his injuries arose out of or in the course of military duty."

## IV. *Conclusions*

The plaintiff contends that the first Sixth Circuit opinion in *Hale,* by virtue of its adoption of the "line of duty" test, marked a significant departure from the holding of *Feres.* The plaintiff argues that the Sixth Circuit by its interpretation of the authorities narrowed the scope of the *Feres* doctrine so as to provide that a serviceman is to be foreclosed from bringing an action under the Tort Claims Act only when the maintenance of the suit would adversely affect military discipline or morale. The plaintiff bases his argument on a reference by the Court of Appeals to an interpretation of *Feres* by Chief Justice Warren made by way of dictum in United States v. Muniz, a case concerned with the applicability of the Tort Claims Act to prisoners in federal penal institutions. Specifically, the plaintiff relies on the Sixth Circuit's reference, at 416 F.2d 359, to a passage in *Muniz* which in turn consisted largely of a quotation extracted from United States v. Brown, *supra*:

> " 'In the last analysis, *Feres* seems best explained by the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed *in the course of military duty* * * *."

United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143 . . . ' [United States v. Muniz, 374 U.S. 150,] at 162, 83 S.Ct. [1850] at 1858 (Emphasis Added.)"

The plaintiff next argues that since actions are to be barred only when maintenance of the suit would adversely affect military discipline and morale, the Government can prevail on this motion only if it can show that at the time of the injury, the plaintiff was acting under the order of one of his superior officers. In support of this latter contention, the plaintiff asserts that the District Court's opinion on remand in *Hale* and the Court of Appeals' subsequent affirmance stand precisely for this proposition. If the plaintiff is correct, there is no doubt but that the Government's motion should be denied since, for purposes of this motion, we have assumed that at the time of his death, Corporal Knight was not following, or acting under, any military order.

The question for our determination thus becomes whether the *Hale* opinions really depart from the *Feres* doctrine in the manner described by the plaintiff. Before answering that question, however, we should first point out that only by showing that *Hale* does represent such a departure can the plaintiff prevail. We say this because the similarity of the case at bar to the facts of the *Feres* case would otherwise compel us to regard the *Feres* doctrine as requiring the granting of the Government's motion. That is, there is no significant difference between a man's drowning in the base swimming pool during off duty hours and a man's burning to death during off duty hours while he is asleep in the barracks. Looking at the instant case and *Feres* in terms of the doctrine plaintiff claims is embodied in the *Hale* opinions, it can be seen that neither the claim brought in the case at bar nor those brought in *Feres* carried with it a greater threat to military discipline or morale than did the other.

Along this same line, we further point out that if the plaintiff is correct in his contentions, it would mean that all kinds of suits, heretofore barred, would become maintainable under the Tort Claims Act. For example, a serviceman could maintain an action for injuries sustained, during off duty hours, when he was struck by a government vehicle on the base, or when he slipped on the pavement on the base while on his way to the post exchange, or when he was given medical treatment in the base infirmary or when he ate some food which had been improperly prepared in the base kitchen. We read the *Brooks-Feres-Brown* line of cases as specifically prohibiting the bringing of these kinds of suits. These three Supreme Court cases do not say that the suit is barred only when it can be shown that at the time of the injury the serviceman was following, or acting under the order of one of his superiors. Instead, they indicate that the action is barred whenever the injury occurred while the serviceman, on the base or elsewhere, was on active duty and subject to military discipline. The case at bar would, therefore, seem to be barred by the *Brooks-Feres-Brown* line of cases, unless, as we stated above, the plaintiff can show that the *Hale* opinions place an interpretation on them that would allow this action to proceed.

We do not believe that the *Hale* opinions, viewed together, represent such an interpretation. In its second opinion in *Hale*, the Sixth Circuit made it clear that its affirmance was not based on the District Court's finding that Private Hale was injured while following the instruction of the military police. Instead, the Court of Appeals said that, regardless of whether Private Hale had been invited or ordered to enter the truck, his injuries still arose out of or in the course of military duty because at the time of the injury Private Hale had reentered · a disciplinary relationship with the Army and was, therefore, subject to military discipline and control. Hale v. United States, *supra,* at page 712.

Moreover, in its first opinion, the Sixth Circuit, though discarding the "incident to service" test, intimated its belief that application of the "line of duty" test would still foreclose an action brought under circumstances similar to those existing in the *Feres* case. The Court made this clear at 416 F.2d 358:

> "In three Tort Claims Act cases the United States Supreme Court has used the terminology 'incident to military service' and 'in the course of military duty' (or 'caused by [military] service') almost as if they were interchangeable . . . . In two of these cases there was no need to choose between the standards. In *Brooks* the injury was not even incident to military service. *And in Feres the injuries clearly arose on a military post in the course of military duty.*" (Emphasis added.)

We believe that the clear import of the *Hale* opinions is that the determinative question in deciding if an injury arose in the line of duty is whether at the time of the injury the serviceman was subject to military discipline. In replacing the broad "incident to service" test with the line of duty test the Court of Appeals was not attempting to effect a dramatic reinterpretation of the *Feres* doctrine. Instead, it sought only to prevent the application of the *Feres* doctrine in unwarranted situations by affording the protection of the line of duty test to the serviceman whose injury was so remote from his military activity that the injury could be characterized as having occurred outside the scope of the disciplinary relationship.

As already noted, the factual situation presented in the case at bar is indistinguishable from that presented in *Feres*. The *Feres* doctrine still being intact in this circuit and elsewhere, we are constrained to conclude that the plaintiff must be foreclosed from bringing this action under the Tort Claims Act.

In reaching our conclusion, we follow not only the teaching of the Supreme

Court cases and the *Hale* opinions, but also that of other cases, decided outside the Sixth Circuit, which have employed the "line of duty" standard. One such case, which was cited both by the Sixth Circuit in its first opinion in *Hale* and by the District Court on remand, is Archer v. United States, 217 F.2d 548, cert. denied 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955). That case involved a West Point cadet who, while on leave, was injured when the Air Force plane, in which he was gratuitously riding back to school, crashed. The Court held that the cadet could not recover under the Tort Claims Act, even though he had been gratuitously on the plane while on leave. The reasoning of the Court was that, once on the plane, the cadet had become subject to military discipline.

We recognize that there is a case involving facts similar to those presented in the case at bar, which reaches a conclusion different from the one we reach. As the plaintiff points out, that case, Brown v. United States, 99 F.Supp. 685 (S.D.W.Va.1951), was one of the cases cited by the Court of Appeals in its first decision in *Hale* as applying the correct, or "line of duty," standard. The Court which decided Brown v. United States, however, was primarily concerned with the distinction between Navy "leave" and "authorized liberty" rather than with whether the plaintiff was under military discipline and control at the time of the accident. Thus, we do not believe that this case is of real value in helping us make our determination.

The *Feres* doctrine, the application of which is well illustrated by the three opinions in Hale v. United States and by Archer v. United States, *supra*, compels us to deny recovery in the instant case. Corporal Knight, when injured, was on the base and subject to military discipline, and his injury "arose out of or in the course of military duty."

The Clerk will enter a summary judgment for defendant.