Garon CAMASSAR, Administrator, C. T. A., D. B. N. of the Estate of Carvel P. Gramlich

v.

UNITED STATES of America.

Civ. A. No. 15845.

United States District Court, D. Connecticut.

Sept. 3, 1975.

Dale P. Faulkner, New London, Conn., James F. Brennan, Jr., Thomas B. Wilson, Groton, Conn., for plaintiff.

Henry S. Cohn, Asst. U. S. Atty., Hartford, Conn., for defendant.

NEWMAN, District Judge.

In his customarily thoughtful and thorough fashion, Magistrate Latimer has endeavored mightily to construct a rationale that will explain the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), harmonize its progeny, and thereby indicate on which side of the *Feres* line this case falls. The resulting test of remoteness between injury and the injured person's military status unhappily leaves uncer-

tain the criteria by which remoteness is to be measured. Specifically, it is not clear whether the *Feres* obstacle to suit if the claim does "arise out of . . . activity incident to service" or "arise out of . . . military duty," *Feres v. United States, supra,* at 146, 71 S.Ct. 153, depends on what the claimant is doing or where he is doing it. The decided cases seem to indicate that if the injury occurred on a base, the claim is barred, whereas an injury off the base might or might not be barred depending on what the claimant was doing. If that is the correct approach, it at least makes deci-

sions more certain for injuries either on a base or within the confines of a functional equivalent. The roadway alleged to be defective in this case is located on a loading pier that is part of a depot owned and controlled by the Navy. That location is sufficiently the equivalent of a military base to invoke whatever considerations underlie the *Feres* decision.

The defendant's motion for summary judgment is therefore granted for these reasons and for the reasons more fully developed in the Magistrate's proposed ruling attached as Appendix A, which is adopted as the Court's ruling.

## APPENDIX A

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

GARON CAMASSAR, Administrator, C.T.A., D.B.N. of the Estate of Carvel P. Gramlich,

Plaintiff

vs.

UNITED STATES OF AMERICA,

Defendant

CIVIL ACTION NO. 15,845

---

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a wrongful death action brought under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b) and 2671 *et seq.*), arising from the death of plaintiff's decedent in a motor vehicle accident while serving in the United States Navy. On motion for summary judgment, defendant contends that the undisputed circumstances show the case to be within the bar to suit "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service" first announced by Supreme Court interpretation of the Act's intended scope in *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950).

The parties' fact stipulations demonstrate the following:

On the date of the accident, Wednesday, February 16, 1972, decedent was serving as a Chief Torpedoman's Mate on the U.S.S. Fulton, a navy submarine tender then docked "on Pier 2, Naval Ammunition Depot, Earle, New Jersey". Decedent was engaged in loading the ship during the morning, leaving for lunch on shore when the task was concluded, returning for a muster at about 1:00 P.M., and departing the ship again at approximately 1:30 P.M. on authorized liberty—which counsel for both parties explained at oral argument as meaning freedom to enjoy the rest of the day off. The afternoon and early evening were spent on shore with several shipmates and friends, mainly at the Petty Officers' Club; decedent was driven back to the ship by Chief Charles H. Koblenzer at about 9:30 P.M. in the latter's privately owned truck, dropped off some wood for use in making a model

sailboat, and left the ship once more as a passenger in Koblenzer's truck at approximately 9:45 P.M. after Koblenzer indicated that he was going back to shore to meet his girlfriend and to get something to eat. The accident in suit occurred on the way.

Defendant's answer admits plaintiff's allegations that the government "through its Department of the Navy, owned, possessed and controlled" the depot, including loading pier no. 2 "upon which was located a roadway for vehicular traffic and tracks for train traffic"; as to the accident's circumstances, the complaint further alleges that Koblenzer's truck "became caught in the railroad tracks, skidded, went out of control, and . . . off the roadway into the water, causing . . . decedent to drown", as the result of the roadway's "dangerous and defective condition" negligently left uncorrected and consisting of driving hazards posed by the tracks' presence and the lack of warning signs and adequate railings.

The Federal Tort Claims Act does not in terms preclude suits by military personnel other than for claims "arising out of . . . combatant activities . . . during time of war", 28 U.S.C. § 2680(j), but while narrow construction of the statute's generally framed waiver of sovereign immunity may be suspect, cf. *Rayonier, Inc. v. United States,* 352 U.S. 315, 319–320, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957), the right to sue has long been held not to extend to servicemen injured on peacetime active duty as the result of carelessness on the part of other members of the armed forces, see *Feres v. United States, supra.* The *Feres* doctrine was originally stated in the context of three claims deemed insufficient, two instances of alleged malpractice by army surgeons and a negligence claim arising from an army lieutenant's death in a barracks fire allegedly resulting from a defective heating plant and an inadequate fire watch, see *id.* 340 U.S. at 136–137, 71 S.Ct. 153, and the Court expressly distinguished earlier recognition of a right of action for "injury . . . [which] did not arise out of or in the course of military duty", *id.* at 146, 71 S.Ct. at 159, in *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), permitting suit by two soldiers injured on leave when their private automobile was struck on a public highway by an army truck negligently driven by a civilian army employee, see *id.* at 50, 69 S.Ct. 918.

*Feres* has been explained as impelled by the Court's concern with the

"peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . ."

*United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), as quoted in *United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). If so, any actual "discipline" nexus would seem rather tenuous in the usual malpractice action, but it may be noted that even *Brown's* allowance of suit by a veteran for post-discharge malpractice in a Veterans Administration hospital in connection with treatment of an underlying service-connected injury provoked sharp dissent by three members of the Court, *United States v. Brown, supra,* 348 U.S. at 113–114, 75 S.Ct. 141, *Brown* itself has not been generously interpreted, see *Henning v. United States,* 446 F.2d 774 (3 Cir. 1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972), cf. *Shults v. United States,* 421 F.2d 170 (5 Cir. 1969), and the in-service medical malpractice claim has been consistently rejected to date, see, e. g., *Harten v. Coons,* 502 F.2d 1363 (10 Cir. 1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975), *Lowe v. United States,* 440 F.2d 452 (5 Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 83, 30 L.

Ed.2d 64 (1971), *Buckingham v. United States*, 394 F.2d 483 (4 Cir. 1968), *Norris v. United States*, 137 F.Supp. 11 (E.D.N.Y.1955), *aff'd per curiam*, 229 F.2d 439 (2 Cir. 1956).

Although *Feres* and *Brown* leave little factual middle ground for malpractice litigation, the widely differing circumstances of the barracks fire tragedy in *Feres* and the ordinary motor vehicle accident in *Brooks* naturally afford greater possible scope for entertaining in-service accidental injury claims. It is fair to state in this context also, however, that while the "precise rationale for the *Feres* rule and its continuing validity have been the source of some confusion", *Henninger v. Unites States*, 473 F.2d 814, 815 (9 Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973), the majority of lower court decisions have traditionally considered *Brooks* the exceptional situation, "effectively requiring the military claimant to demonstrate that even an off-duty injury has no significant link with conditions of life in the armed forces", *Boyd v. United States*, Civil No. 15,384 (D. Conn.1973), *aff'd*, 493 F.2d 1397 (2 Cir. 1974) (Table). If questionable to remark simply that *"Feres* required no nexus between discipline and injury", *Hall v. United States*, 451 F.2d 353, 354 (1 Cir. 1971), the more commonly articulated focus on whether the serviceman was in some sense subject to military control or discipline at the time of injury, see, e. g., *Mills v. Tucker*, 499 F.2d 866, 867–868 (9 Cir. 1974), see also *Herreman v. United States*, 476 F.2d 234 (7 Cir. 1973), *Hale v. United States*, 452 F.2d 668 (6 Cir. 1971), is perhaps better understood as a test of remoteness between injury and the injured person's military status, see *Knight v. United States*, 361 F.Supp. 708, 713 (W.D.Tenn. 1972), *aff'd*, 480 F.2d 927 (6 Cir. 1973) (Table), cf. *Gursley v. United States*, 232 F.Supp. 614 (D.Colo.1964). In that regard, Supreme Court comment that its construction of the Federal Tort Claims Act in *Feres* ruling out service-related claims "seems best explained" as prompted by such considerations as "the effects of the maintenance of such suits on discipline", *United States v. Muniz, supra*, 374 U.S. at 162, 83 S.Ct. at 1858, would appear just that—notation of a persuasive basis for original adoption of the statutory interpretation, and not an invitation to analyze each such claim to determine whether the particular suit would in fact "undermine traditional concepts of military discipline", as attempted by one district court in *Downes v. United States*, 249 F.Supp. 626, 628 (E.D.N.C.1965).

In *Boyd v. United States, supra*, this Court did dismiss an off-duty, on-base traffic accident claim directly challenging the adequacy of responsible military authorities' regulation of the United States Air Force base on Bermuda, but application of *Feres* there was influenced by the distinct and explicit "foreign country" suit exclusion mandated by 28 U.S.C. § 2680(k), and the current state of the law has been fully re-examined in weighing the circumstances of the present case. With *Boyd* in mind, plaintiff has specifically represented—and defendant has not disputed—that the ship on which decedent served "was permanently homeported at the U. S. Naval Base in Groton, Connecticut and was docked at the Naval Ammunition Depot in . . . New Jersey for only temporary purposes", contending that the liability claim here of inadequate maintenance of depot facilities would not concern the shipboard command to which decedent was more immediately subject, but the fact that one Navy authority rather than another would be called to task is not ultimately significant in this case. As suggested above, the more realistically critical test of whether a serviceman's injuries "arise out of or are in the course of activity incident to service" or "arise out of or in the course of military duty", *Feres v. United States, supra*, 340 U.S. at 146, 71 S.Ct. at 159, is the existence or absence of meaningful causal connection between the injury occurrence and the injured person's military service.

Examined in that light, emerging authority from the Ninth Circuit may be illustrative. Mentioned in *Boyd* as an example of the short shrift frequently given off-duty, on-base injury claims, *Coffey v. United States,* 324 F.Supp. 1087 (S.D.Cal.1971), *aff'd per curiam,* 455 F.2d 1380 (9 Cir. 1972), held suit against the government barred for the death of a marine apparently heading for off-post liberty when the car in which he was a passenger was struck by a train engine "at the intersection of a government-maintained private road and the railroad tracks within the confines of the military reservation", the fatal collision allegedly having resulted from failure "to properly mark and guard the railroad crossing", *id.,* 324 F.Supp. at 1087. By contrast, *Mills v. Tucker, supra,* more recently sanctioned litigation arising from the death of a naval petty officer in a traffic accident caused in part by the Navy's negligent road maintenance; there, the highway was a publicly used base access road, adjacent to but fenced off from a naval depot and also connecting different civilian areas travelled on by decedent while on furlough and returning from a civilian "moonlighting" job to his quarters on another military base to attend his son's birthday party, *id.* at 867–868. Recovery in the latter case was of course sustained because the injury was recognized as the equivalent of that in *Brooks,* "not caused by . . service except in the sense that all human events depend upon what has already transpired", *Brooks v. United States, supra,* 337 U.S. at 52, 69 S.Ct. at 920, see *Mills v. Tucker, supra* at 867. Conceding that *Coffey* meant "the fact that a serviceman was off duty or on leave is not always dispositive", the Court of Appeals distinguished the accident on base as a situation "where the serviceman is at least subject to ultimate military control", *Mills v. Tucker, supra* at 868.

Although doubtful in any event that the proferred distinction between questioning base and ship commands would be of consequence, there should be no impediment to the type of liability claim advanced by plaintiff if decedent's military service was a fortuitous element, as in *Mills,* but that is not the situation presented. The strongest argument supporting plaintiff's reliance on *Brooks* obviously is that decedent was freed from duty obligations and pursuing his personal affairs at the time of the accident, yet the occurrence so clearly stems from decedent's navy service that it is entirely appropriate to regard the accident site an overriding factor. While the state of temporary "liberty" should not be thought a technical quibble, compare *Shults v. United States, supra* at 171, decedent's presence at the depot and use of the allegedly hazardous pier roadway were far from sheer happenstance, being instead closely related to his active duty assignment at the naval facility. It seems unlikely that *Feres* would have been differently decided if the army officer's presence in his assertedly unsafe barracks quarters was as much the product of freedom of choice off duty as decedent's ill-fated venture along the pier, see *Gursley v. United States, supra,* but cf. *Wilcox v. United States,* 117 F.Supp. 119, 122–123 (S.D.N.Y.1953), and not plausibly determinative here that decedent met his death within the depot's confines rather than on board the ship itself. Although the balancing of pertinent factors could be obscured by such potentially conceptualistic inquiry as whether decedent was "at least subject to ultimate military control," *Mills v. Tucker, supra* at 868, the causal nexus between injury and military service appears so plain on the record submitted in the instant action that the Court must conclude that plaintiff's claim does indeed "arise out of . . . activity incident to service" or "arise out of . . . military duty", *Feres v. United States, supra,* 340 U.S. at 146, 71 S.Ct. at 159.

There being no genuine issue of fact material to that conclusion, and defend-

ant accordingly being entitled to judgment as a matter of law, cf. Rule 56(c), Fed.R.Civ.P., defendant's motion for summary judgment is hereby granted.

Dated at New Haven, Connecticut, this 25th day of August 1975.

Arthur H. Latimer

(s)‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
United States Magistrate