Julie A. BOZEMAN, As Administratrix of the Goods, Chattels and Credits of Johnny R. Bozeman, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 233, Docket 85–6131.

United States Court of Appeals, Second Circuit.

Argued Oct. 9, 1985.

Decided Dec. 17, 1985.

Lee S. Michaels, Auburn, N.Y., for plaintiff-appellant.

Frederick C. Emery, Jr., Asst. U.S. Atty., W.D. of N.Y., Rochester, N.Y. (Salvatore R. Martoche, U.S. Atty. for the W.D. of N.Y., Rochester, N.Y., of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Mrs. Bozeman appeals the order of the United States District Court for the Western District of New York, Telesca, J., granting defendant's motion under Fed.R. Civ.P. 12(b)(6) and dismissing her claim for relief under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (1982) (FTCA), on the ground that it was barred by the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

The court below had jurisdiction under 28 U.S.C. § 1346(b) (1982) to entertain the complaint. This Court has jurisdiction of the appeal under 28 U.S.C. § 1291 (1982). For the reasons that follow, we affirm the decision of the district court.

BACKGROUND

Plaintiff Mrs. Bozeman is the executor of her deceased husband's estate. Her husband, Johnny Bozeman, a military policeman in the United States Army, died when the car in which he was a passenger left Route 96–A in Fayette, New York, collided

with a house and overturned.[1] On the day that he died, Johnny Bozeman and the driver of the car, David Brown, had been drinking at the Non-Commissioned Officers' (NCO) club at the Seneca Army Depot (Depot), Romulus, New York, where they were stationed. Both men were off duty the day of the accident; however, neither was on furlough.

The NCO club is a social club, operated out of "nonappropriated" funds, funds "other than moneys appropriated by the Congress." Army Regulation (AR) 230–1–3b (1976). The club is under military regulation and control.[2] Bozeman and Brown were served alcoholic drinks there by a civilian employee of the club.

Mrs. Bozeman received survivor's benefits through the Army and settled a claim against Brown before bringing this action against the United States.[3] Her complaint alleged two causes of action, one under New York's Dram Shop Act[4] and a second under the theory that the Army owed Johnny Bozeman a duty of care to serve alcoholic beverages in a responsible manner. The duty was allegedly breached when the Army, through its employee, continued to serve drinks to Brown, the driver of the car, when he was obviously drunk.

The Army moved to dismiss Mrs. Bozeman's complaint on the ground that it was barred by the doctrine first stated in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (Jackson, J.). Judge Telesca granted the motion on the ground that Johnny Bozeman's death was "incident to service," reasoning that the tort occurred on base even though the injury occurred off the base. J. App. at 31. Mrs. Bozeman claims on this appeal that *Feres* should not apply to this case because (1) Bozeman was off duty and therefore not subject to military discipline at the time of his injury, and (2) the injury occurred off the Depot.

The district court correctly interpreted and applied the law of this Circuit as it had been stated prior to the Supreme Court's recent decision in *Shearer v. United States*, —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). *Shearer* partially restates the *Feres* doctrine. After carefully considering *Shearer*, the arguments of counsel and the record before us, we conclude that the district court's dismissal of this case should stand.

## DISCUSSION

1. *Feres and Its Progeny*

In *Feres* the Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to

---

1. The parties dispute whether Brown was driving the car. It is irrelevant to the issues raised in this appeal whether Brown or Bozeman was driving the car at the time of the accident.

2. The record on this point is sparse. The complaint and stipulation of facts included in the record do not outline the exact extent of the Army's control and regulation of the NCO club. More extensive findings of fact on the Army's control of the NCO club would be justified in some circumstances. *See Roush v. United States*, 752 F.2d 1460 (9th Cir.1985) (in case involving intentional tort committed by employee of enlisted man's club, remand made to district court for findings on issue of military control of the club). Mrs. Bozeman's theory of recovery presupposes this control, however, and counsel for the United States conceded the point at oral argument.

   Moreover, Army regulations amply prove this control. NCO clubs like the one Bozeman visited are "nonappropriated fund instrumentalities." AR 230–1–3c (1976) and AR 230–1–3f (1976). These instrumentalities "perform an essential government function," AR 230–1–3c (1976), and "provide for the comfort, pleasure, contentment ... of service personnel," AR 230–1–3a (1976). "Command and staff supervision" of these instrumentalities is provided by government personnel. AR 230–1–4a (1977); AR 230–1–5d (1983) (major commanders); AR 230–1–5e (1983) (installation commanders).

3. These facts were conceded at oral argument on this case.

4. The district court noted in its opinion that the New York Dram Shop law does not apply to federal property. J.App. at 32 (citing *United States v. State Tax Comm'n of Mississippi*, 412 U.S. 363, 93 S.Ct. 2183, 37 L.Ed.2d 1 (1973); *Manfredonia v. American Airlines*, 68 A.D.2d 131, 138, 416 N.Y.S.2d 286 (2d Dep't 1979)). Mrs. Bozeman did not raise or brief that issue in this appeal and we therefore treat that claim as abandoned.

servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. The holding was supported by three considerations. First, the FTCA did not create new causes of action but rather acknowledged liability "under circumstances that would bring private liability into existence." *Id.* at 141, 71 S.Ct. at 157. Second, the relationship between the service and the service member was "distinctively federal in character," *id.* at 143, 71 S.Ct. at 158 (citing *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)); therefore, subjecting any of the services to conflicting demands of state tort law would interfere with that relationship. Finally, Congress had already provided "systems of simple, certain, and uniform compensation for injuries or death of those in armed services." *Id.* at 144, 71 S.Ct. at 158.

The *Feres* doctrine is a blunt instrument; courts and commentators have often been critical of it. *See, e.g., Johnson v. United States*, 749 F.2d 1530 (panel opinion noting the "widespread, almost universal criticism of *Feres* "), *vacated and ordered for rehearing in banc*, 760 F.2d 244 (11th Cir. 1985); *Kohn v. United States*, 680 F.2d 922, 925 (2d Cir.1982) ("[A]lthough *Feres* remains a controversial decision, we are bound by the Supreme Court's continuing adherence to it."); *LaBash v. United States Department of the Army*, 668 F.2d 1153, 1156 (10th Cir.1982) ("Although many courts have expressed reservations about the continuing validity of the broad *Feres* doctrine, only the United States Supreme Court can overrule or modify *Feres.* "); Note, *From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery?*, 77 Mich.L.Rev. 1099 (1979).

The original rationales for the holding in *Feres* have been undercut. *See Johnson v. United States*, 704 F.2d 1431, 1435 (9th Cir.1983) ("Decisions subsequent to *Feres* have substantially weakened the persuasive force of the first two rationales," that the military relationship has a distinctly federal character and that there is an alternative compensation system.). Courts have come to characterize the core of the *Feres* doctrine as the consideration that permitting suits under the FTCA by military personnel for service-related injuries would unduly interfere with military discipline. *See, e.g., Johnson*, 704 F.2d at 1436 ("the most persuasive justification for the *Feres* doctrine is the potential impact of civil suits on military discipline").

Mrs. Bozeman claims on this appeal that military discipline is not implicated by her suit because her husband was off duty at the time he was injured, and because the injury did not occur at the Depot. The district court properly interpreted the law of this Circuit when it concluded that neither of these facts is controlling.

In *Kohn v. United States*, 680 F.2d 922 (2d Cir.1982), we noted that "military personnel 'continued in active duty status even when they are on liberty or on leave.' " *Id.* at 925 (quoting *Camassar v. United States*, 531 F.2d 1149, 1151 n. 2 (2d Cir. 1976) (per curiam)). Under that test, Johnny Bozeman was on "active duty" at the time of his injury and was therefore subject to the *Feres* doctrine because he was not on furlough. *See Feres*, 340 U.S. at 146, 71 S.Ct. at 159.

Plaintiff also claimed that the *Feres* doctrine does not apply because the injury occurred off the Depot despite the fact that the allegedly tortious conduct (serving alcohol to a drunken person who would foreseeably drive a car and injure himself or another) occurred at the Depot. Citing *Kohn* and *Camassar v. United States*, 400 F.Supp. 894, 895 (D.Conn.1975), *aff'd*, 531 F.2d 1149 (2d Cir.1976), the district court expressed some concern that they seemed to make location of the accident site the dispositive factor in deciding whether to apply the *Feres* doctrine. In both of those cases, however, the challenged conduct of the government occurred on a military base. *Camassar* involved an automobile accident on a government owned pier; *Kohn* involved an alleged failure to supervise a soldier who later killed plaintiff's decedent. The district court in this case,

therefore, properly looked to the location of the alleged conduct that gave rise to tort liability in order to determine whether the *Feres* doctrine barred the suit. *See United States v. Shearer,* — U.S. —, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985).

This conclusion is reinforced by referring to other cases where the *Feres* doctrine has been applied to service members who were injured while taking part in government sponsored social or recreational activities and where the tort victims' status as members of the armed forces determined their right to participate in those activities. *See, e.g., Woodside v. United States,* 606 F.2d 134, 142 (6th Cir.1979) (non-appropriated fund Air Force flying club; serviceman on leave at time of accident); *Hass v. United States,* 518 F.2d 1138, 1141–42 (4th Cir. 1975) (horse rented from military riding stable; serviceman off duty); *Chambers v. United States,* 357 F.2d 224, 229 (8th Cir. 1966) (on-base swimming pool used for recreation; held, irrelevant whether serviceman was on leave). *But cf. Johnson,* 704 F.2d at 1438–41 (9th Cir.1983) (off-duty serviceman employed as bartender injured following after-hours party in NCO club; held that military discipline did not apply to situation, but result would be different if plaintiff had been a patron of the NCO club); *Stephan v. United States,* 490 F.Supp. 323, 327 (W.D.Mich.1980) (party on a military reservation at a lake distant from base itself; serviceman off duty at time of injury).

Johnny Bozeman was only entitled to be in the NCO club because he had an appropriate rank, was a member of the Army and was on active duty status. The application of the *Feres* doctrine to these facts is thus consistent with the cases decided on similar facts.

We also note that the "alternative compensation" discussed in *Feres* is present in this case: Mrs. Bozeman received the serviceman's survivor benefits. Although this factor is "no longer controlling," *United States v. Shearer,* — U.S. at — n. 4, 105 S.Ct. at 3043 n. 4, it makes the outcome in this case more palatable. *See Hunt v.* *United States,* 636 F.2d 580, 598 (D.C.Cir. 1980) ("[G]iven the Supreme Court's inconsistent treatment of this factor, it cannot be said that the presence of an alternative compensation system either explains or justifies the *Feres* doctrine; it only makes the effect of the doctrine more palatable.").

### 2. *The Effect of United States v. Shearer*

■ Military discipline has been characterized by the courts as the chief rationale for the *Feres* doctrine. The Supreme Court recently reaffirmed this characterization in *United States v. Shearer,* — U.S. —, 105 S.Ct. 3039. The Court there dismissed a claim by the executors of a serviceman's estate that the military had negligently failed to prevent an assault and battery on their decedent. *Id.* at —, 105 S.Ct. at 3043. In *Shearer,* the injury to the decedent had occurred off base. The plaintiff claimed that the military "negligently and carelessly failed to exert a reasonably sufficient control" over her son's killer, failed to warn her son that the assailant was at large, and "negligently and carelessly failed to ... remove [the killer] from active military duty." *Id.*

The Court of Appeals in that case held that the complaint was not barred by *Feres* because the injury occurred off base and the plaintiff's son was off duty at the time the tort was committed. The *Shearer* Court rejected the lower court's bright line test and stated that each case brought by members of the armed services or their representatives under the FTCA requires an analysis of whether the *Feres* doctrine applies. *Id.* In rejecting an analysis of the tort that turned on the situs of the injury, the Court stated that "the situs of the murder is not nearly as important as whether the suit requires the civilian court to second-guess military decisions." *Id.* (citing *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977)).

The *Shearer* Court found that the claim before it would require a court to "second-guess military decisions." The Court reasoned that the claim would "require Army

officers to testify in court as to each other's actions." *Id.* (quoting *Stencel*, 431 U.S. at 673, 97 S.Ct. at 2058). It also reasoned that

> [t]o permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct.

*Id.* In short, the desire not to "second-guess military decisions" requires sound judicial restraint.

In the case before us a district court would be called upon to second-guess decisions made by military personnel if this suit were allowed to proceed to trial. The evidence needed to establish that the Army owed Johnny Bozeman a duty of care when he was in the NCO club would require Army officers to testify about their policies in staffing and running the NCO club. The relevant policies would determine when civilian bartenders in NCO clubs were required to stop serving intoxicated patrons. The policies would also determine to what extent the Army imposed a duty on servicemen in the NCO clubs and in bars off base to regulate their own alcoholic intake. If a duty of care toward Johnny Bozeman could be established, then demonstrating a breach of the duty would entail proof that the Army's employees either failed to enforce regulations by overlooking certain behavior or neglected to enforce rules formulated with the unique demands of military morale and base discipline in mind. A defense would require Army officers to justify employment decisions related to hiring the bartender. In sum, maintenance of this suit "would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions...." *Shearer,* —— U.S. at ——, 105 S.Ct. at 3044.

Mrs. Bozeman's claim is barred by the *Feres* doctrine. The judgment of the district court is affirmed. The parties shall bear their own costs.