Alexis E. VELOZ–GERTRUDIS, Zenaida Figueroa Veloz and Felicita Gertrudis, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CV 90–2755(RR).

United States District Court, E.D. New York.

June 6, 1991.

As Amended July 3, 1991.

Leavitt, Kerson & Leffler by Paul E. Kerson, Forest Hills, N.Y., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., Andrew J. Maloney, U.S. Atty., Janis G. Schulmeisters, Torts Branch, Civ. Div. by Mark E. Schaefer, Trial Atty., New York City, for defendant.

## MEMORANDUM AND ORDER

RAGGI, District Judge:

Alexis E. Veloz–Gertrudis, sues the United States under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680 (1988), for injuries sustained in a hazing incident aboard the *U.S.S. Forrestal.* His mother, Zenaida Figueroa Veloz, and his wife, Felicita Gertrudis, also sue for damages related to this incident.

The United States moves to dismiss plaintiffs' complaint, or in the alternative for summary judgment, relying on the principles enunciated in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny. For the reasons stated herein, the motion to dismiss is granted.

## FACTUAL BACKGROUND

For purposes of considering defendant's motion, the court views all facts in the light most favorable to the plaintiffs.

### 1. *The Hazing Incident*

In late November 1989, twenty-year old Alexis Veloz–Gertrudis was assigned to active duty as a Navy Airman Recruit aboard the *U.S.S. Forrestal.* On the night of January 18, 1990, while the *Forrestal* was in the Mediterranean Sea, Veloz–Gertrudis was the victim of a hazing incident in the ship's engine room. Senior crewmen tied him up with rope and suspended him upside down from an air pressure valve. He was stripped to the waist and grease was smeared over his stomach. Crew members then took turns slapping him on the stomach and chest. When Veloz–Gertrudis

sought to avoid the blows by bringing his knees up to his chest, a crew member yanked on the rope by which plaintiff was hanging, forcing his ankles over the top of the valve. Veloz–Gertrudis heard his ankle "pop" and began screaming with pain for the men to stop. Instead, the crewmen continued to strike him, one delivering a series of particularly hard blows in purported retaliation for plaintiff's attempt to kick him.

### 2. The Subsequent Altercation and Its Report to Navy Authorities

When Veloz–Gertrudis was finally released, an altercation ensued between him and one of the men involved in the hazing, in the course of which plaintiff was punched in the face and neck. A short time later, in another part of the ship, the same crewman charged at Veloz–Gertrudis. Plaintiff tried to defend himself, grabbing a screwdriver from a nearby locker. The crew member nevertheless succeeded in throwing Veloz–Gertrudis to the deck. While other crewmen held plaintiff face down, the original assailant jumped repeatedly on Veloz–Gertrudis' back.

Subsequently, Veloz–Gertrudis was summoned to a meeting with three participants in the original engine room hazing. Plaintiff overheard them agree not to report the incident in light of their personal involvement. One of the men did authorize Veloz–Gertrudis to go to the ship's medical unit, but stressed that he should tell the examining doctor that his injuries had been sustained falling down a ladder. Because he was afraid, Veloz–Gertrudis agreed to lie.

The severity of plaintiff's injuries required his transfer to a Navy hospital. Upon learning that he would be leaving the Forrestal, and after speaking to the ship's priest, Veloz–Gertrudis told senior officials the truth about what had happened.

Thereafter, Veloz–Gertrudis was treated at a military hospital in Spain and at a facility in Jacksonville, Florida.[1] He suf-

fered, inter alia, two broken vertebrae, severe post-traumatic stress disorder and an ankle injury. He has been found permanently disabled by the Navy and his discharge application is pending.

### 3. The Internal Investigation

Because hazing is strictly prohibited by the Navy, an internal investigation of the events of January 18, 1990 was conducted. That investigation revealed that plaintiff was an unwilling participant in the hazing. It was also determined that other unauthorized "initiations" had taken place in the past on the Forrestal. As a result, several participants in the January 18, 1990 hazing were disciplined. Moreover, certain officers were reinstructed regarding the rules concerning initiations and hazings. Instructions and admonitions were also given via closed-circuit television to all crew aboard the Forrestal.

### 4. Plaintiffs' Claims

Plaintiffs initially filed claims for damages with the United States Department of the Navy. These were denied by letters dated May 22, 1990 and July 21, 1990 in light of Feres. On August 6, 1990, plaintiffs filed this action. They claim that the United States is liable for the intentional tortious conduct of its subordinates, i.e., the crew members who participated in the hazing. They further claim that the United States is liable for its negligent supervision of the Forrestal crew.

### DISCUSSION

■ The United States urges dismissal for lack of subject matter jurisdiction relying on the Supreme Court decision in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In Feres, the Court held that the United States was not subject to suit under the Federal Torts Claims Act for injuries that "arise out of or are in the course of activity incident to [military] service." Id. at 146, 71 S.Ct. at

---

1. Apparently, while Veloz–Gertrudis was in Jacksonville, the Forrestal came into port. During that time, a shot was fired at plaintiff. Although the identity of the shooter was never discovered, because of a possible link between this incident and the hazing, Veloz–Gertrudis was transferred to another facility.

159. The doctrine applies not simply to suits brought by members of the armed forces, but also to claims made by their families. *See In re Agent Orange Product Liability Litigation,* 506 F.Supp. 762, 780 (E.D.N.Y.1980) (and cases cited therein).[2]

Because *Feres* operates as a "blunt instrument," *Bozeman v. United States,* 780 F.2d 198, 200 (2d Cir.1985), precluding suit in a wide variety of cases, it has been frequently criticized, *see, e.g., United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 2074 n. *, 95 L.Ed.2d 648 (1987) (Scalia, J., dissenting) (cases and commentators cited therein). Nevertheless, both the Supreme Court and the Second Circuit recognize its continuing viability. *See United States v. Johnson,* 107 S.Ct. at 2067–70 (majority upholds *Feres* doctrine and declines to modify it); *accord Sanchez v. United States,* 878 F.2d 633 (2d Cir.1989) (applying *Feres* in light of *Johnson* ). This court must do likewise.

Plaintiffs contend that, even if *Feres* is good law, it is not applicable to this case since hazing, the activity in which Veloz–Gertrudis was injured, is prohibited by the Navy. Although this court recognizes— and, indeed, respondent concedes—that hazing is not authorized on any Navy ship, this does not by itself mandate a finding that plaintiff's injuries were not incident to his military service or that *Feres* does not apply.

Although "neither the [FTCA] nor the opinions of the Supreme Court have indicated definitively the full meaning of the phrase 'incident to service,' " *see* 1 Jayson, *Handling Federal Tort Claims* § 155.01, at 5–66 (1990), courts have interpreted the phrase broadly and found it applicable to any loss or injury occurring under circumstances rationally connected to a serviceman's status in the armed services. *E.g., Woodside v. United States,* 606 F.2d 134, 141 (6th Cir.1979); *In re Agent Orange Product Liability Litigation,* 506 F.Supp. at 775 (and cases cited therein); *Camassar v. United States,* 400 F.Supp. 894, 897 (D.Conn.1975), *aff'd,* 531 F.2d 1149 (2d Cir. 1976) (per curiam); 1 Jayson, *Handling Federal Tort Claims* § 155.02, at 5–68 (and cases cited therein). Thus, *Feres* has not been limited to those cases in which servicemen have been injured in the course of actual military operations. *See In re Agent Orange Product Liability Litigation,* 506 F.Supp. at 775 (quoting *Hass v. United States,* 518 F.2d 1138, 1141 (4th Cir.1975)). Neither has its applicability been dependent upon an injury occurring while a serviceman was acting pursuant to orders. *See Woodside v. United States,* 606 F.2d at 141. *Feres* has barred claims

---

**2.** Defendant further seeks dismissal on the ground that plaintiffs' claims are not cognizable under the FTCA, but only under the Suits in Admiralty Act ("SIAA"), 46 U.S.C. §§ 741–52 (1988), or the Public Vessels Act ("PVA"), 46 U.S.C. §§ 781–90 (1988). The express terms of the FTCA do bar suit under that statute for claims "for which a remedy is provided by sections 741–752, 781–790 of Title 46...." 28 U.S.C. § 2680(d). Moreover, ample case law supports defendant's argument that the causes of action here pleaded are more appropriately raised under these sections of Title 46. *See, e.g., Foremost Insur. Co. v. Richardson,* 457 U.S. 668, 673–74, 102 S.Ct. 2654, 2657–58, 73 L.Ed.2d 300 (1982) (admiralty jurisdiction determined by (1) situs of tort, *i.e.,* whether it occurred on navigable water; and (2) status, *i.e.,* whether the wrong has a significant relationship to traditional maritime activity); *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 261, 93 S.Ct. 493, 501, 34 L.Ed.2d 454 (1972) (same); *Keene Corp. v. United States,* 700 F.2d 836, 843 (2d Cir.) (same), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). While dismis-

sal for failure to plead under the appropriate statute might generally be accompanied by a grant of leave to replead, because the *Feres* doctrine is equally applicable to suits under the SIAA and PVA, *see, e.g., Cusanelli v. Klaver,* 698 F.2d 82, 85 (2d Cir.1983); *Bon v. United States,* 802 F.2d 1092, 1094 n. 2 (9th Cir.1986); *Potts v. United States,* 723 F.2d 20, 21–22 (6th Cir.1983), *cert. denied,* 466 U.S. 959, 104 S.Ct. 2172, 80 L.Ed.2d 555 (1984), this court's ruling in favor of defendant on the *Feres* question warrants complete dismissal.

The inapplicability of the FTCA to this case, and the applicability of the *Feres* doctrine, make it unnecessary to address that statute's further exception to claims against the United States for assaults and batteries committed by its employees. 28 U.S.C. § 2680(h). Neither must the court resolve the scope of that exception to the particular claims here pursued. *See generally Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 2455, 101 L.Ed.2d 352 (1988) (exception applies to intentional tort but not to claim of negligent supervision).

as diverse as those involving injury to an Air Force officer sustained while he was training for a commercial pilot's license at a military-sponsored club, *id.* at 142; to a service member riding a horse rented from a military stable, *Hass v. United States,* 518 F.2d at 1141, and even to a military policeman killed in an off-base accident allegedly caused by his drunk-driver companion who had become intoxicated at an NCO club, *Bozeman v. United States,* 780 F.2d at 200–01.

In reaching these results, courts have identified a number of factors relevant to the applicability of *Feres.* Was the serviceman on duty when the injury was sustained? Was the serviceman, regardless of his duty status, on a military base or craft, and therefore subject to military control or discipline, at the time of the injury? Was he engaged in a military mission? Was he enjoying a privilege related to or dependent upon his military status at the time of the injury? A number of decisions suggest that an affirmative answer to any one of these questions suffices to bring the matter within the bounds of *Feres. E.g., Woodside v. United States,* 606 F.2d at 141; *Hass v. United States,* 518 F.2d at 1141; *In re Agent Orange Product Liability Litigation,* 506 F.Supp. at 776. Other courts urge that the factors be reviewed flexibly in light of the circumstances of a particular case. *E.g., Miller v. United States,* 643 F.2d 481, 493 (8th Cir.1981) (en banc); *Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1151 (5th Cir.1981); *see generally* 1 Jayson, *Handling Federal Tort Claims* § 155.02, 5–77 to 5–78 (and cases cited therein).

Whichever approach is here followed, the factors weigh against plaintiffs' maintenance of this lawsuit. There is no question that Veloz–Gertrudis was on active duty on board a Navy ship detailed to patrol the Mediterranean Sea at the time of the hazing. Neither he nor any other individual involved in the incident would have been on board that ship but for military assignment. Thus, the injury sustained by plaintiff, whether the result of authorized activity or not, must be deemed to have occurred incident to service in the United States military.

Plaintiffs' contention that an injury cannot be sustained incident to service if it originates in unauthorized or forbidden activity ignores the rationale behind the *Feres* doctrine. Civil suits by servicemen for injuries sustained incident to their military service are barred because of: (1) concern for the distinctly federal relationship between the United States and its military personnel, which should not be subject to various legal standards based on the fortuity of where an injury occurs; (2) the presence of an alternative compensation and benefit scheme for military personnel; and (3) the potential for undue disruption of military discipline. Although, for a time, the third factor seemed most important, *see United States v. Shearer,* 473 U.S. 52, 58 n. 4, 105 S.Ct. 3039, 3043 n. 4, 87 L.Ed.2d 38 (1985), the Supreme Court has recently reaffirmed the vitality of all three *Feres* rationales, *United States v. Johnson,* 107 S.Ct. at 2068–69; *accord Sanchez v. United States,* 878 F.2d at 635.

In this case, all three rationales are implicated. Veloz–Gertrudis was injured on board a Navy ship patrolling the Mediterranean. It would obviously intrude upon the uniquely federal relationship between the United States and individuals serving in its Navy if the government were to be held accountable in various jurisdictions for torts occurring to its servicemen while its ships were at sea. Moreover, Veloz–Gertrudis has received treatment for his injuries at Navy hospitals. Indeed, he is eligible for future treatment and disability benefits pursuant to the military's alternative compensation and benefit scheme.

Finally, and most obvious in this case, pursuit of plaintiffs' claim would impermissibly intrude on military discipline. The crux of the claim is, after all, that the Navy fails to take the steps necessary to prevent hazings on board its ships. Resolution of this claim would require "commanding officers ... to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions" that they have made regarding the operation of a ship and the

supervision of the crew members who serve on it. *See United States v. Shearer,* 473 U.S. at 58, 105 S.Ct. at 3043. This is clearly barred by *Feres. See, e.g., id.; Bozeman v. United States,* 780 F.2d at 202; *Brown v. United States,* 739 F.2d 362, 369 (8th Cir.1984).

 This prohibition against any inquiry into "the command relationship between a service member and his or her superior officers," *Brown v. United States,* 739 F.2d at 369, plainly extends to unauthorized, or even illegal actions taken by military personnel. In *United States v. Shearer, supra,* one off-duty serviceman was killed by another in an incident off-base, clearly an unlawful act. The complaint was that the military had failed to take appropriate preventive action given their knowledge that the killer had a previous conviction for manslaughter. The Supreme Court found the suit barred by *Feres.* In *Bozeman v. United States, supra,* an off-duty serviceman was killed in an off-base drunk driving accident, an activity not authorized by military authorities. The car's driver had become intoxicated at an on-base club. The complaint was that the Army negligently permitted alcoholic beverages to be served in such clubs in an irresponsible manner. Once again, *Feres* required dismissal. In *Brown v. United States, supra,* a case with disturbing parallels to this one, an off-duty black National Guardsman was the victim of a "mock lynching" conducted at an on-base party. The complaint charged that base officials failed to take the steps necessary to prevent this plainly unauthorized occurrence. The court relied on *Feres* to dismiss the complaint as against the United States.

Not insignificantly, the court in *Brown* permitted the case to go forward against the individual guardsmen who had participated in the incident, drawing a distinction between the scope of *Feres* when suit was brought against the United States and when it was brought against military personnel for acts unrelated to their duties. *Brown v. United States,* 739 F.2d at 367–69. The distinction was approved in *Durant v. Neneman,* 884 F.2d 1350 (10th Cir.

1989), a case relied on by plaintiffs. There, suit was permitted against the serviceman driver of a private vehicle that struck and killed a soldier on a military base. But no claim was even raised as against the United States, and the court distinguished between the strict standards applicable to "true *Feres*" actions against the sovereign and the more flexible standards applicable to suits by one serviceman against another for "non-military acts." *See id.* at 1352–54. Plaintiffs pursue this action only as against the United States. Thus, *Durant* is not squarely applicable.

This court dismisses plaintiffs' case for lack of subject matter jurisdiction since it relates to injuries sustained incident to service by an on-duty crew member on board a Navy ship then on military patrol, and since court inquiry into the incident would plainly implicate all three of the concerns that underlie the sovereign immunity protected by the *Feres* doctrine.

### CONCLUSION

The motion to dismiss this action is granted in light of *Feres v. United States, supra,* and its progeny.

SO ORDERED.